GERARD LEE and others *v.* BLACKMAN LEE and others.

It is no objection to a tales juror, that his name does not appear on the jury list, as made out by the County Commissioners; and a challenge for that cause was properly overruled.

On the trial of an issue, *devisavit vel non,* no presumption of fraud, as a matter of law, arises from the fact that one of the legatees was a general agent of the testator; and the charge of the Court that in such cases fraud was to be determined by the evidence, was correct.

(*Lee* v. *Pearce,* 68 N. C. Rep. 76, cited and distinguished from this.)

Issue of DEVISAVIT VEL NON, tried before *Buxton, J.,* at Spring Term, 1874, of HARNETT Superior Court, to which it had been removed from the Superior Court of Sampson county.

Pharaoh Lee, the alleged testator, was an aged white man, who lived and died unmarried in the county of Sampson. The paper writing, purporting to be his last will and testament, was offered for probate in the Probate Court of Sampson county, by the propounders, who are colored people and former slaves of the testator, and mentioned as legatees in the will. The caveators are brothers and sisters, and the children of deceased brothers and sisters, heirs at law and next of kin of the testator.

Upon the trial the caveators challenged a person called as a

tales juror for cause. The grounds of such challenge and the facts connected therewith, are fully stated in the opinion of Justice SETTLE. The presiding Judge overruled the challenge, upon which the caveators excepted.

It was admitted that the testator had sufficient mental capacity to make a will at the time of the execution of the paper writing propounded, but the caveators insisted :

1. That the paper writing purporting to be a will had never been duly executed.

2. That if duly executed, its execution was procured through fraud and undue influence, practiced upon and exerted over the testator by the propounders or by some of them.

The evidence was voluminous, and not relating immediately to the points upon which the case was decided, is omitted.

His Honor charged the jury : That the mental capacity of the supposed testator being conceded, only two questions are presented by the evidence and argument of counsel :

1. Was the paper writing propounded as the last will and testament of Pharaoh Lee, duly executed by him in the presence of two witnesses, who subscribed their names in his presence and at his request? His Honor had passed upon this question before allowing the paper to be read in evidence, and had decided that the propounders had made a *prima faciae* case. It was for the jury, however, to pass upon the credability of the witnesses, and the Court charged that if the jury believed the evidence of the subscribing witnesses and of the draughtman of the will, then all the requirements of the law had been complied with.

2. Was the paper propounded really the last will and testament of Pharaoh Lee, deceased, or was it, through undue influence exercised over him, not his will, but the will of somebody else?

In determining this question, all the circumstances and surroundings attending its execution, were to be considered by the jury. The Court had even allowed the politics of the draughtsman and of the subscribing witnesses to be given in evidence,

along with the color of the propounders, and to be made matters of comment, not for the purpose of exciting prejudice, but to assist in ascertaining whether it was his will, by showing the points of sympathy between them and the legatees.

Against all feeling of prejudice, the Court cautioned the jury and charged that in this case there is no presumption of fraud in law, growing out of the relations existing between the supposed testator and the legatees, as disclosed in the evidence. That in this case fraud was a matter of proof, an open question of fact, to be determined by the evidence.

His Honor further charged that in cases of wills, fair persuasion is admissible; it is permitted to remind a testator of previous promises made by him, or of past services rendered by the legatee. Undue influence is forbidden. To be undue, the influence must be fraudulent and controlling—such a influence as would cause a man to make a will which he would not otherwise have made.

Upon the request of the caveators, his Honor gave the following special instructions:

"In this case, if the jury believe it, there is evidence of undue influence over the supposed testator, and sufficient evidence to set aside the will, unless the evidence on the part of the propounders turns the scale on their side." To which his Honor added: The propounders have offered counter evidence. It is for the jury to decide between them. The question for them to respond to is, "Is this his will at that time?" If it was at that time not his free, voluntary act and will, but was executed through fear, coercion or improper influence of the legatees, or of others, then the jury will find against it. But if at the time it was executed, it was his free, voluntary act and will, executed just as he wanted it, then they would find in favor of the will, even though they might think from the evidence that he afterwards changed his mind. For if he changed his mind, he should have changed his will, by destroying the old or making a new one, this being the only way the law allows for revocation.

There is no evidence in this case of any revocation with the formalities required by law.

The jury returned a verdict in support of the will. The caveators moved for a rule for a new trial upon the following grounds :

That the Court erred in ruling that the tales juror objected to was competent to set on the trial ;

That the Court erred in allowing the will to be read in evidence ;

That the charge of the Court that in this case " there is no presumption of fraud in law, growing out of the relation existing between the supposed testator and the legatees, as disclosed in the evidence, in this case, fraud is a matter of proof, an open question of fact to be determined by the evidence," was erroneous, and his Honor ought to have charged the jury that there was evidence of a general agency of one of the legatees for the testator, which would raise a presumption of fraud as a matter of law.

There were other exceptions to the charge of his Honor, which not being entertained by the Court, it is thought unnecessary to repeat.

The motion for a new trial was overruled. Judgment, admitting the will to probate, and appeal by the caveators.

*B. Fuller*, for the appellants.
*Guthrie*, contra.

SETTLE, J.   On the trial of this issue of *devisavit vel non*, it became necessary for the sheriff to summons tales jurors, which he did by the order of the Court.   The caveators, after having challenged three jurors, peremptorily challenged for cause, a tales juror, being a colored man named Anson Bailey, who was examined on his *voir dire*.   He was asked by the counsel for the caveators if he had formed or expressed an opinion about this cause.   He answered no.   The counsel asked him if he had

paid his taxes. He answered yes. He was then asked if his name was on the jury list for the county. He answered no.

Upon this response the counsel for the caveators insisted that Anson Bailey was incompetent to serve as a tales juror, as the county commissioners had not seen fit to place his name on the jury list; that *ex vi termini* " tales jurors " meant just such jurors only whose names were on the regular jury list. His Honor ruled that no proper ground of objection had been shown to the competency of the juror. To this ruling the caveators excepted, and peremptorily challenged the juror, and another was sworn in his place.

It will be observed that according to our present legislation, the qualification of tales jurors are not the same as those required of the regular panel. All on the regular panel must have paid tax the preceding year ; and are required to be of " good moral character, and of sufficient intelligence " to act as jurors. (Bat. Rev., ch. 17, sec. 229a.) " And that there may not be a defeat of jurors, the sheriff shall by order of Court summon, from day to day, of the bystanders, other jurors being freeholders within the county where the Court is held, to serve on the petit jury," &c. Addenda to Code, sec. 229, p. —. Bat. Rev., page 860.

So, either by accident or design, tales jurors are required to be freeholders within the county where the Court is held, while ;the regular panel need not be freeholders. The act prescribes the mode in which the jury list is to be made, revised and corrected from time to time. From ought that appears to us, Anson Bailey was an intelligent, moral man, and a freeholder in Harnett county, who had paid his taxes the preceding year. It is true he answered that his name was not on the jury list, and he doubtless supposed that it was not there, and it may or may not have been there. But how could he know how the fact was ? How many men in a county could tell, when suddenly called upon, whether their names are in the jury box or not ? A name may have been there last year, and yet may not be there now, or *vice versa*, depending upon

such additions or subtractions as the commissioners may make in the jury list. This mode of testing the qualifications of jurors is utterly impracticable. To carry it out effectually, would require the constant attendance of the county commissioners in Court with the jury list, to ascertain whether the names of talesmen were on their jury list or not.

The statute is directory to the sheriff to summons of the bystanders, moral and intelligent men, who have paid their taxes the preceding year, and who are freeholders within the county where the Court is held.

And it is of the utmost importance, in fact essential to the administration of justice, that none but good men be called to serve upon juries.

If a talesman be summoned who is deficient in any one of these qualifications, he may be challenged for cause; and then the challenging party should assign and show cause, as in other challenges for cause; but we do not concede that the mere fact that the name of an intelligent, moral man, who is a freeholder, and has paid his tax, cannot be found on the jury list, is a good cause of challenge.

His Honor instructed the jury " that there is no presumption of fraud in law growing out of the relation existing between the supposed testator and the legatees, as described in the evidence; that in this case fraud is matter of proof, an open question of fact to be determined by the evidence."

The caveators except to this charge, and insist that his Honor should have instructed the jury " that there was evidence of a general agency of Calvin Lee for Pharoah Lee, the supposed testator, which would raise the presumption of fraud, as a matter of law."

The authority relied upon to support this position is *Lee* v. *Pearce*, 68 N. C., 76, where it is said, " as ancillary to the jurisdiction, to avoid *deeds* obtained by fraud, undue influence or moral duress, Courts of equity established the doctrine that, in certain fiduciary relations, if there be dealings between the parties on the complaint of the party in the power of the other,

the relation of itself and without other evidence, raises a presumption of fraud, as a matter of law, which annuls the act unless such presumption be rebutted by proof that no fraud was committed and no undue influence or moral duress exerted."

But this doctrine has never been understood as applying to wills. To so apply it would raise a presumption against every will in favor of a child, a wife, a father or other relative, and would defeat probably one-half of the wills propounded for probate.

Let it be remembered that this presumption of fraud in transactions between persons occupying certain fiduciary and confidential relations, is an emination from the Courts of equity and not from the Courts of law; and as an issue of *devisavit vel non*, always had to be tried at law, this presumption never applied to wills.

Mr. Adams says, at page 176, " the avoidance of transactions on the ground of fraud is a copious source of jurisdiction in equity. With respect to fraud used in obtaining a will, this jurisdiction does not exist."

We think that the other exceptions of the caveators do not require comment.

Let it be certified that there is no error, &c.

PER CURIAM.                    Judgment affirmed.