Rarick *et al. v.* Ulmer, by Next Friend.

Filed February 18, 1896.

NOTE.—The whole subject of tenancy by entireties is reviewed in an extensive note to *Hiles* v. *Fisher* (N. Y.), 30 L. R. A. 305.

---

No. 17,257.

## RARICK ET AL. *v.* ULMER, BY NEXT FRIEND.

WITNESS.—*Nonexpert.—Insanity.*—Insanity or unsoundness of mind cannot be proved by a nonexpert witness unless he first gives the facts upon which his opinion is based.

NEW TRIAL.—*Insufficiency of Evidence.*—The trial judge should set aside a verdict and grant a new trial, where a verdict is returned which is unwarranted by the evidence.

WILL.—*Testamentary  Capacity.— Evidence.— Verdict.—* A  verdict
that one was without testamentary capacity cannot rest upon the
opinions of witnesses for the contestant that testator's mind was
not very sound, where it appears from other parts of contestant's
evidence that he had mind enough to know the extent and value of
all his property, the names of those who might or ought to be the
natural objects of his bounty, and was able to hold them in mind
long enough to dictate and have his will prepared.

From the Kosciusko Circuit Court.

*Widaman & Frazer*, for appellants.

*H. S. Biggs* and *L. W. Royse*, for appellee.

McCABE, J.—The appellee sued the appellants to
contest the will of Andrew Rarick, deceased.   The
issues were tried by a jury resulting in a verdict for
the plaintiff, appellee, upon which the court rendered
judgment over appellant's motion for a new trial set-
ting aside the will.

Error is assigned on the action of the trial court in
overruling the motion for a new trial.

The principal ground relied on in the motion is
that the evidence does not support the verdict.

The evidence shows that appellant was the widow
of the testator and that she was a second wife and
childless and that she and a number of his children
by a former marriage and one grandchild, the appel-
lee, a child of his deceased daughter, survived him;
that appellant had lived with him some twentyfive
years previous to his death; that he died seized of
about four hundred acres of land in Kosciusko county,
and left personal property of the value of $2,500 to
$3,000; that by his will in question he gave his said
wife, appellant, a life estate in eighty acres of land
and all the personal property mostly consisting of
promissory notes.

The real estate was fairly and equitably divided

between his living children, but to his grandchild, the appellee, he gave only five dollars.

The charge in the complaint was that the will was procured by undue influence exerted by the appellant on the testator and that he was of unsound mind when the will was executed.

There are hundreds of pages of evidence in the transcript totally irrelevant to the issues, though there is now and then a stray item that is pertinent to the issues. Most of this irrelevant testimony seems to have gone in without an objection or exception. But when objection to such evidence was made it was always overruled. Irrelevant evidence is very different from incompetent evidence, especially where it has been admitted without objection.

Incompetent evidence thus admitted may be sufficient to establish a fact or facts in issue and if so there could be no reversal on the ground that the issue had been maintained by incompetent evidence. For want of an objection to its competency that objection is waived. For instance, oral evidence of the contents of the written instrument sued on in a given case may be introduced if no objection is made. No reversal could take place because that evidence may prove the contents of the instrument as thoroughly as the instrument itself. Not so if the evidence given and unobjected to, is totally irrelevant to the issue; for instance, instead of relating to the contents of the instrument sued on, if it had been to the effect that the moon is or is not made of green cheese. Such evidence, though admitted without objection, is not only irrelevant, but it does not prove the contents of the written instrument sued on and cannot support a verdict. Such is the nature of much the greater part of the vast volume of the evidence in this case.

The appellee's relevant evidence shows that Andrew Rarick, the testator, was a well to do farmer of

more than ordinarily strong mind; that he was a good citizen, a dutiful and kind father and husband; that the appellee, a mere child at the time of the trial, was the only surviving child of his youngest daughter; that the daughter had married much against his will because he did not like the man she married; that the appellee was the first and only child of that marriage, her mother dying while she was a mere babe; that her father immediately sent her off to his father in the State of Missouri where she has ever since resided. Her father, Ulmer, remained in Indiana and two or three years thereafter married again.

The evidence further showed that some eight or ten years before his death the testator became afflicted with a cancer in his face. The ravages of the disease were steady and progressive so that in the last five or six years of his life he was a great sufferer therefrom, requiring the constant attention of his wife to keep the running ulcer in his face cleaned and dressed, which had to be done at least twice a day. During all the time and in spite of all efforts to avoid it, there was an almost unbearable odor created in the room, which she patiently endured and uncomplainingly and with her own hand tenderly ministered to his every want to the very last. This disease gave rise to the charge of unsoundness of mind and these kind offices of the appellant presumably induced the charge of undue influence, for there is not a scintilla of other evidence that has the slightest bearing on the charge of undue influence. See *Goodbar* v. *Lidikey*, 136 Ind. 1. (43 Am. St. R. 296).

The evidence shows that at the time the will was executed, the disease had destroyed the sight of one of his eyes and had to some extent impaired the sight of the other. In this condition, however, he had made

several visits to Ohio and on the day the will was made went to the county seat, some seven miles from his home, his wife accompanying him on each occasion. But on the day the will was made after reaching the public square he went alone to the court house in search of Judge Haymond, since elected regular judge, whom he desired to write his will, found him, made known his business and Judge Haymond prepared the will solely on the directions and statements and requests made by the testator with no one present who had any interest in the matter.

From these facts and from his acquaintance with the testator for about thirty years he stated it as his opinion that the testator on that day was of sound mind.

The appellee's testimony as to testamentary capacity is all made up of statements of witnesses describing the disease with which the testator was afflicted, the great suffering and pain he endured therefrom and the testator's own statements that he was not fit to do business, and to this the witnesses for the appellee sometimes added their own opinion that he was not fit to do business. The only business he had to do of any consequence was lending a little money to his neighbors, taking their notes and collecting the same and the interest. His wife did this in his presence, wrote the notes, counted the money and made the calculations.

There was no evidence by any witness that he ever did an act or ever said a word that had the slightest tendency to prove unsoundness of mind. On the contrary, every act the appellee's evidence showed that he had done and every word that he had ever said tended to prove his soundness of mind, and that continued long after the will was made.

On these facts some few of appellee's witnesses who were non-experts gave it as their opinion that

his mind was not very strong, and some that it had been weakened and perhaps that it was not entirely sound. But the facts that each of these witnesses testified to, show that his mind was sound.

None of them stated any fact which could be reasonably made the foundation of an opinion that the testator was of unsound mind. Appellee's evidence abundantly shows that the testator knew the extent and value of his property, the names of all his children and those that might or ought to be the natural objects of his bounty and that he could hold these in his mind long enough to have his will prepared.

It is settled law that insanity or unsoundness of mind cannot be proven by a witness who is not an expert, unless the witness first gives the facts upon which his opinion is based. *Grubb* v. *State*, 117 Ind. 277; *Burkhart* v. *Gladish*, 123 Ind. 337; *Fiscus* v. *Turner*, 125 Ind. 46; *Pennsylvania Co.* v. *Newmeyer*, 129 Ind. 401.

It was said in *Burkhart* v. *Gladish, supra*, the facts stated by the witnesses mentioned were not such as "could reasonably be made the foundation of an opinion as to the mental unsoundness of the testator."

Those opinions therefore were incompetent evidence though they were not in evidence. As was said in *Hamrick* v. *State, ex rel.*, 134 Ind., at page 326: "In permitting an opinion by a non-expert witness as to sanity or insanity, the rule is said to grow out of the necessity arising from an inability of the witness to describe the appearance, the action, the language, and the manner of the subject with such precision and minute detail as to possess the jury of all the knowledge of the witness, and thereby enable the jury to form that opinion instead of receiving the opinion of the witness. In this State it is so well and so often decided, as to need no citation of the cases, that this opinion of the witness must proceed from

the facts and circumstances which the witness shall
have given to the jury of his acquaintance with and
observation of the subject, not including, of course,
those observations not susceptible of description."

Here, all the facts stated on which the witnesses
based their opinions related to the disease and suffer-
ing of the testator and his unfitness to do business in
that condition, none of them having any relation to
his mental condition or testamentary capacity.

As was further said in the case last quoted from:
"The ordinary affairs of life, and the capacity essen-
tial to transact them, are not subjects involving any
rule of science or art.   They are within the com-
prehension and common observation of that class of
men who constitute the jury.   They do not require a
particular knowledge of the person whose capacity
is under investigation.   Whether that capacity exists
or not is peculiarly a question for the jury.   It is the
very question to be passed upon by the jury.   When
the particular phases of unsoundness of mind, the
special characteristics of the individual are given, the
jury must raise the standard, and determine whether
the essential capacity exists.   It would hardly be con-
tended that the abstract question of what is sufficient
mental capacity to transact the ordinary affairs of
life, could be made the subject of testimony.   Much
less can it be made the subject of opinion evidence
from those whose station in life and business occupa-
tions give them no better means of knowledge than
the jurors possess."

And the same may be said of the opinions of wit-
nesses to the effect that the testator was unfit to do
business or transact business.

There is no evidence to support the charge of undue
influence, and neither is there any evidence to sup-
port the charge of unsoundness of mind, except the
opinions of the very few witnesses who were non-

experts already mentioned. Assuming without deciding that such opinions standing alone are sufficient to support the verdict, yet as they do not assume or pretend to furnish any measure or to define the degree of the testator's supposed mental infirmity, and as other parts of appellee's evidence show that testator had mind enough to know the extent and value of all his property, the names of all his children and those that might or ought to be the natural objects of his bounty and was able to hold all these in his mind long enough to dictate and have his will prepared, testamentary capacity is shown by appellee and therefore there is a total failure of evidence to establish testamentary incapacity. There is no conflict between those opinions of unsoundness of mind, if such opinions may be so classed, and the other parts of the appellee's evidence showing testamentary capacity. Because as was said in *Bundy* v. *McKnight, Exr.*, 48 Ind., at page 514: "That testamentary capacity is consistent, especially in very aged persons, with a great degree of mental infirmity, and some degree of mental perversion or aberration, at times, provided there is satisfactory proof that the testator, at the time of the execution of the will, really did comprehend its import and scope, and was not under the control of any improper or undue influence, or of any deception or delusion." We do not claim the right to reweigh the evidence so as to settle conflicts therein, nor do we do so in this case because as we have seen there is no conflict.

The testator by appellee's evidence, having been shown to be of testamentary capacity, it makes no difference whether the will was just or unjust, it was his sacred right to dispose of his property as he pleased. While the children of the testator have been made defendants in this case their active aid has been on the side of the contest. A *dictum* to the

contrary in *Bowman* v. *Phillips*, 47 Ind. 341, to the effect that courts will resort to technicalities to overthrow a will for the sole reason that it is unjust, is disapproved.

About all they could hope to gain by overthrowing the will would be to share in the personal property. There seems to be the best reason in the world that the testator should have given his wife something more than the law would have cast upon her. The courts should be cautious how, by taking away the power to insure respect, they thus increase the misfortunes of a class into which no one can assure himself he may not fall, which includes almost the whole of those whose lot it is to reach old age and suffer bodily affliction and which already carries a burden sufficiently heavy. If such persons cannot reward by their bounty those by whom they are treated with tenderness and by whose watchful care their comfort is guarded, they will lose, in most instances, the only means remaining to them of self-preservation.

The special judge who presided at the trial should have instantly set aside the verdict as unsupported by the evidence.

The judge of the trial court does not sit as a mere moderator to record the will of the jury. He has other functions and duties to perform which he cannot lawfully escape or evade. He must confine the evidence within the issues and when a verdict is returned unwarranted by the evidence he must set it aside and grant a new trial when asked for.

The court erred in overruling the motion for a new trial.

The judgment is reversed and the cause remanded with instructions to sustain the motion for a new trial.

Filed February 19, 1896.