## BREADHEFT v. CLEVELAND ET AL.

[No. 22,429.   Filed March 4, 1915.   Rehearing denied December 17, 1915.]

1.  WILLS.—*Resisting Probate.*—*Burden of Proof.*—In an action to resist the probate of a will the proponents have the burden of proving the due execution of the instrument and that the testator was of sound mind and not unduly influenced.   p. 132.

2.  WILLS.—*Resisting Probate.*—*Undue Influence.*—*Advantage from Fiduciary Relation.*—*Instructions.*—Where the scrivener drawing a will for testatrix was at the time her attorney, and by the terms of the instrument he was made executor and all her property was bequeathed to him as trustee to hold during the life of her son, after which it was to be divided among other designated persons, such scrivener could not be said to have derived any advantage under the will warranting the giving of an instruction applying the doctrine that a legal presumption of undue influence obtains where a will is written by a beneficiary occupying a fiduciary relation to the testator.   p. 132.

3.  WILLS.—*Resisting Probate.*—*Undue Influence.*—*Evidence of Fiduciary Relation.*—*Duty to Explain.*—While the fact that the attorney for testatrix acted as draftsman in preparing her will and was designated therein as executor and trustee of her estate was proper for the jury to consider, with other evidence, on the question of undue influence, no legal presumption of undue influence arose therefrom to impose any duty of explanation.   p. 133.

4.  WILLS.—*Resisting Probate.*—*Mental Incapacity.*—*Evidence.*—*Instructions.*—In an action to resist the probate of a will where the evidence showed that testatrix had only a son and some grandchildren, that prior to the making of the will the son had become a bankrupt, and that testatrix had been cared for and looked after by a lady to whom a large portion of the estate was devised, the question of whether the son of testatrix was the natural object of her bounty was a question of fact for the jury, and it was error for the court in instructing the jury upon the subject of determining the soundness of mind of testatrix to state that the law would recognize the son as the natural object of her bounty.   (*Bradley* v. *Onstott* [1914], 180 Ind. 687, distinguished.)   pp. 134, 136, 139, 140.

5.  APPEAL.—*Review.*—*Instructions.*—Reversal will not be predicated on alleged error in instructions which, when considered with other instructions given, state the law correctly, nor on the refusal of instructions which were substantially covered by instructions given.   p. 136.

6.  WILLS.—*Nature of Testamentary Power.*—*Right to Transmit Title.*—The right to transmit title to property by descent or will is a creature of the lawmaking power, and the right to transmit title

to both real and personal property by last will as conferred by the Ordinance of 1787, governing the Northwest Territory, remains unaffected except as limited by the marital relation, the age of the testator, his capacity, and certain statutory formalities in execution.  p. 137.

7.  WILLS.—*Mental Capacity.*—*Scope of Consideration.*—Where the testator's sanity is controverted the unnaturalness of his conduct is proper evidence for consideration, and the provisions of the will itself, with reference to the natural objects of testator's bounty, may be considered as circumstances together with other evidence in determining his mental condition; but the admission of the will in evidence for such purpose necessarily requires the jury to first determine the subsidiary fact as to who ought to have been the natural objects of testator's bounty without regard to who might have been the beneficiaries of his estate under the law of descent, and the fact that a testator's selection of the objects of his bounty involved unnatural conduct will not alone justify a verdict of incapacity.  p. 138.

8.  WILLS.—*Disregard of Natural Laws.*—*Disinheriting Child.*—The power to devise necessarily includes the power to disregard natural rules of justice and duty, and one may disinherit a child inspired by no worthier motive than pride or revenge.  p. 138.

9.  TRIAL.—*Evidence.*—*Presumptions.*—*Instructions.*—The ordinary function of most so-called presumptions of law, as they relate to the law of evidence, is to cast on the party against whom the presumption works the duty of going forward with the evidence, and when that duty is performed the presumption is *functus officio* and has no proper place in the instructions to the jury.  p. 140.

From Probate Court of Marion County (643); *Frank B. Ross*, Judge.

Action by Charles F. Cleveland against Mary A. Breadheft and others.  From the judgment rendered, the defendant named appeals.  *Reversed.*

*Louis B. Ewbank* and *Ryan & Ruckelshaus*, for appellant.

*Walker & Hollett, Charles F. Remy* and *James M. Berryhill*, for appellees.

MORRIS, J.—Action by appellee, Charles F. Cleveland, to resist the probate of his mother's will, on the alleged grounds of unsoundness of mind, undue execution, duress and fraud.  There was a verdict and judgment for plaintiff, from which

Mary A. Breadheft appeals. Her motion for a new trial, which was overruled, presents for review certain instructions given and refused.

By the terms of the will, the decedent's property was devised and bequeathed to one Buenting, a lawyer who wrote the will, as trustee to hold during the life of appellee, Charles F. Cleveland, the latter to receive the net income thereof; at his death the property was given one-eighth each to three named grandchildren, and two charitable corporations, and the remainder to appellant. Buenting was named as executor. By instruction No. 4, the court properly informed the jury that the burden was on the proponents, appellant and the executor, Buenting, to prove the due execution of the instrument and that the testatrix was of sound mind and was not unduly influenced, when the will was executed. Instruction No. 24, given by the court, reads as follows: "I instruct you that one occupying a fiduciary relation must, when the question is raised, establish his right in equity and good conscience to any advantage gained from his principal. And in this case, if you find from the evidence that the defendant, L. D. Buenting, at the time of the execution of the alleged will was the attorney of Mary E. Cleveland, and that as such attorney drew the will in controversy; and if you further find that by the terms of such instrument he was made the executor thereof, and was made the trustee of all the property purporting to be devised and bequeathed, with full power to control and manage all of said property during the lifetime of plaintiff; and if you further find that L. D. Buenting gained any advantage by the terms of said will; and if you further find from the evidence that Mary E. Cleveland was at the time a woman of about eighty or eighty-one years of

age and because of her age feeble in body and mind, then, and in that event, I instruct you that said defendant, Buenting, at the time held toward Mary E. Cleveland a position of trust and confidence, and the burden will be upon him to show by a preponderance of the evidence his right in equity and good conscience to any benefits accruing to him under and pursuant to the terms of the will thus written by him." The instruction was erroneous. It can not be said that Buenting derived any benefit or "advantage" from the provisions of the will, within the meaning of the doctrine recognized by many courts that a legal presumption of undue influence obtains where the will is written by a beneficiary occupying a fiduciary relation to the testator. *Snodgrass* v. *Smith* (1907), 15 Ann. Cas. 551, note. The scrivener here can obtain nothing except for services as executor and trustee, the reasonable value of which must be determined by the probate court. *Compher* v. *Browning* (1906), 219 Ill. 429, 76 N. E. 678, 109 Am. St. 346.

Appellant further contends that the rule which exacts of a fiduciary beneficiary the duty of explanation does not apply to wills as to gifts *inter vivos*, and cites *Lee* v. *Lee* (1874), 71 N. C. 139 and other cases. It is unnecessary to consider this proposition, because the instruction was erroneous for the reason given. While it was proper for the jury to consider the fact that the draftsman was named as executor and trustee, together with other evidence offered to show undue influence, the sole fact of the naming of the draftsman as executor and trustee creates no legal presumption of undue influence which imposes a duty of explanation. *Friedersdorf* v. *Lacy* (1910), 173 Ind. 429, 90 N. E. 766.

Instruction No. 11 given, contains the following:

"and, if it shall be found that when she was in good health and free from undue influence, she declared her intention to dispose of her property in the same manner it is disposed of by the will, or in any manner, it is a fact you may consider in determining the validity of the will." Appellant contends that inasmuch as undue influence as well as testamentary capacity was in issue, the instruction was erroneous because it authorizes the jury to consider hearsay declarations of testatrix, without limitations, on the issue of undue influence. Appellee contends that the instruction was a part of a series, including Nos. 6 to 11, inclusive, all relating to the issue of unsoundness of mind; that it was the purpose of the court to limit the consideration of such declarations to such issue, and this purpose is disclosed by a consideration of said series. Inasmuch as the judgment must be reversed because of error in giving instruction No. 24, it is unnecessary to determine the question here presented because it is not likely that such ambiguity will appear in any instruction given on another trial.

Instruction No. 10, given by the court, reads as follows: "*When a woman dies leaving a son surviving her, and leaves no husband and no descendants of any deceased child or children, the law would recognize her son as the natural object of her bounty,* when she executes her last will and testament, and if without any reason she either wholly or to a considerable extent disinherits such child, such conduct upon the testatrix's part becomes a part of the evidence which the jury trying a will contest have the right to consider, if the unsoundness of mind of such testatrix is alleged in such contest. If, therefore, you find from the evidence in this case that at the time the will in question was executed by the decedent, Mary E. Cleve-

land, she was the owner of an estate consisting of both real and personal property, and that the deceased left a son surviving her, and you find from the evidence that at the time of executing said alleged will, there was no reason why she should, in disposing of her estate, discriminate against her son, and you further find from the evidence that the alleged will executed by the said Mary E. Cleveland *does discriminate against her son to any considerable extent, you may take that fact, if it be a fact, into consideration when you come to determine whether or not Mary E. Cleveland was a person of sound mind when, as alleged, she executed the will in controversy in this case."* (Italics ours.) Appellant contends that the italicized portion of the instruction invades the province of the jury.

By instruction No. 13 the court set out certain tests of testamentary capacity which included the following: intelligence and reason of sufficient strength "to know * * * the number and names of those who are the natural objects of her bounty." The evidence shows that the testatrix, when the will was made, had a son and some grandchildren; that theretofore the son had failed financially and had filed a petition in voluntary bankruptcy; there was evidence from which the jury might have found that appellant nursed and cared for testatrix and looked after her wants and that her comfort depended on the services of appellant. Whether under such evidence, the son was the "natural object of her bounty," was a question of fact for the jury's determination, and the court erred in telling the jury that the law would recognize appellee as such object. *Lamb* v. *Lamb* (1886), 105 Ind. 456, 5 N. E. 171; *Rarick* v. *Ulmer* (1896), 144 Ind. 25, 33, 42 N. E. 1099; *Stevens* v. *Leonard* (1900), 154 Ind. 67, 75, 56 N. E. 27; *In re Riordan's Estate* (1910), 13 Cal. App. 313, 109 Pac. 629.

Complaint is made of instructions Nos. 12 and 8 given by the court. Considered in connection with other instructions given, they are not erroneous. It is contended that the court erred in refusing instructions Nos. 5 and 6 requested by appellant, which sought to inform the jury that declarations of testatrix, made before and after the time of executing the will, should be considered only on the issue of testamentary capacity. We are of the opinion that the subject-matter of the requested instructions was substantially covered by an instruction given. Other questions are presented which we deem it unnecessary to consider because they are not likely to arise on another trial. Judgment reversed with instructions to sustain appellant's motion for a new trial.

## ON PETITION FOR REHEARING.

MORRIS, C. J.—Counsel for appellee insist that the court erred in its opinion in relation to instruction No. 24, given by the trial court. We have considered the reasons urged by counsel, but adhere to our holding shown in the original opinion.

It is most earnestly contended that instruction No. 10, given by the court, was not erroneous. Counsel say, "If the law would not recognize the only son as the natural object of the mother's bounty, then we misunderstand the statute of descents. If Mrs. Cleveland had died intestate her only son would have taken all of her property. There being no other heirs, the law would have recognized him as entitled to all." No better reason could be found for holding the instruction erroneous and calculated to mislead the jury than the above quoted statement, since counsel must concede that the jury would naturally have understood the

charge as they themselves did.   The right to trans-
mit title to property by descent or will is a
6.   creature of the lawmaking power.   *Donald-
son* v. *State, ex rel.* (1915), 182 .Ind. 615, 101
N. E. 485.   The Roman civil law granted the right
to make a will but limited the testator's power to
disinherit children.   *Spencer* v. *Terry's Estate* (1903),
133 Mich. 39, 94 N. W. 372, 374.   At common law
it would seem that the power to make a will was
granted, but the right to devise real estate thereby
was denied.   However, by the Ordinance of 1787,
governing the territory including that of Indiana, un-
limited power was granted to transmit title to prop-
erty both real and personal, by last will and testa-
ment.   Since then such power has ever existed here
except as limited by the marital relation, the age of
the testator, his capacity, and certain statutory
formalities in execution.   §§3112, 3132 Burns
1914, §§2556, 2576 R. S. 1881.   Where no will is
made, the title to the intestate's property devolves
by fixed rules prescribed by legislative authority.   In
prescribing such rules the legislature recognized
kinship by blood, the marital relation, and the source
of title of the intestate's property.   These rules, how-
ever, by their express language, apply only to
intestates.   §2990 Burns 1914, §2467 R. S.
1881.   If not so expressly limited, the implication
would necessarily follow from the granting of the un-
qualified right of testamentary disposition, for the
law is not guilty of the solecism of granting an ab-
solute right to testator to select, by will, the objects
of his bounty, and then limiting such right by its
canons of descent.   To assert that the law recognizes
the absolute right of testamentary devolution, but
will recognize or presume an unexplained departure
from the law of descent as evidence *ipso facto*
of deficient testamentary capacity, is self-stultify-

ing. No one makes a will except to prevent the operation of some law of descent, and a will strictly following such laws would be inoperative.

However, the right of testamentary disposition is withheld from persons of unsound mind, and where the testator's sanity is controverted, the un-

7. naturalness of his conduct is proper evidence for consideration; and it is quite generally held that the provisions of the will itself may be considered, as circumstances, together with other evidence, however, in determining the testator's mental condition. Where the will is admitted for such purpose, the jury is instructed that it may consider the will's provisions with reference to the natural objects of the testator's bounty. This requires the jury to first determine the subsidiary fact as to who would have been, under the evidence, such natural objects. By natural object is not meant the legal object recognized by the law of descent, for the power and purpose to disregard some canon of descent is necessarily implied in the making of any will. The word "natural" itself aptly points out what is meant. The jury is to determine not what the testator would probably have done if governed by fixed canons of descent or any law of human contrivance, but what he might, under all the evidence, have reasonably been expected to do, when subject to no influence except that of nature, with its own rules of duty and justice. If the jury finds that the testator has selected objects of his bounty differing from those designated by natural laws, such fact, involving unnatural conduct, may be considered by the jury, in connection with other evidence, in determining the testator's sanity. But such fact alone will not justify a verdict of incapacity, for

8. the power to devise necessarily includes also that of disregarding what are deemed natural

rules of justice and duty. One may disinherit a child inspired by no worthier motive than pride or revenge. *Addington* v. *Wilson* (1854), 5 Ind. 137, 61 Am. Dec. 81; *Sevening* v. *Smith* (1912), 153 Iowa 639, 133 N. W. 1081; 40 Cyc 1034; *In re Carey* (1913), 56 Colo. 77, 136 Pac. 1175, 51 L. R. A. (N. S.) 927, 947, Ann. Cas. 1915 B 951.

If the instruction under consideration be deemed merely a declaration of a law of descent, it manifestly invades the province of the jury by presenting for its consideration a collateral matter only tending to mislead the jury in its determination of a fact—and one subsidiary rather than ultimate. If it be treated as declaring a presumption of the law, it must stand or fall on the existence or nonexistence of such rule of law. To say that the law recognizes a given person as the natural object of another's bounty is the manifest equivalent of the declaration that the law presumes such object in the absence of rebutting proof. Aside from the incongruity involved in the language of the statement that the law presumes a child to be the "natural" object of its parent's bounty, Is it true that any presumption obtains in regard to an object of a testator's gifts? This case was triable, and tried, by jury. In such trials it is the sole province of the jury to determine the ultimate facts proven, and this result is attained by the jurors applying their powers of reasoning to the evidentiary matters shown. "For reasoning there is no law other than the laws of thought." Thayer, Evidence 314, 317, 334, 337. The invasion of the jury's domain of finding facts is so often accomplished by means of socalled presumptions of law, that the subject is deserving of more than passing notice. Much confusion has resulted from treating as presumptions of law matters that are merely proper inferences of

fact. *Donaldson* v. *State, ex rel.* (1906), 167 Ind. 553, 78 N. E. 182, and authorities cited; *Modern Woodman, etc.,* v. *Craiger* (1910), 175 Ind. 30, 92 N. E. 113, 93 N. E. 209; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 705, 88 N. E. 612.

Further confusion has resulted from failure to distinguish between assumptions of procedure and administration and rules of substantive law, and treating so-called presumptions of law as constituting, *per se,* probative matter. 2 Chamberlayne, Mod. Law of Ev. §§1082-1158, inclusive. Thayer, Evidence 337, 338.

4. The ordinary function of most so-called presumptions of law, as they relate to the law of evidence, is to cast on the party against whom the presumption works, the duty of going forward with evidence, and when that duty is performed the presumption is *functus officio* and has no proper place in the instructions to the jury. Thayer, Evidence 339, 346; 2 Chamberlayne, Mod. Law of Ev. §§1021, 1088, note 5. Our modern law of evidence is the product of the jury system. The laws of continental Europe, where no such system obtains, recognize many maxims and presumptions which can have no logical place in jurisdictions recognizing the right of trial by jury. The law is not an exact science, and yet our jurisprudence has sometimes been affected by borrowing from continental methods the "substitution of arithmetic for observation and reasoning, when estimating the value of evidence," and giving too much credit to continental writers dealing with "a system of technical and, as it were, mechanical belief." Thayer, Evidence 343.

Of our own system, a distinguished author says: "by taking out of the hands of the judge the actual decision of the facts, and the application of the law to them, it cuts up mechanical decision by the roots,

prevents artificial systems of proof from being formed, and secures the other advantages of a casual tribunal." Best, Evidence §85. Yet notwithstanding the fact that the jury's domain has been so often defined by those entitled to speak with authority, the attempt continually recurs to find some artificial touchstone of truth which will relieve the triers of fact from the exercise of their reasoning faculties and correctly answer the disputed question of fact by a so-called presumption of law founded on the judge's observation of the usual conduct, habits and instincts of mankind. *City of Indianapolis* v. *Keeley* (1906), 167 Ind. 516, 526, 79 N. E. 499. Such attempts are doomed to failure, as long as courts properly recognize the essential limitations of the power of judges in jury trials. If a court may not presume ordinary care in any negligence case, though the law exacts of every one the exercise of such care to avoid injuring any one with whom he comes in contact, it is manifestly improper to presume that an only child is the natural object of a parent's bounty in making a will where the law enjoins no duty whatever on the parent to make a gift to such child, but expressly gives him the right to disinherit the child by giving all his property to a stranger. This precise question has not received much consideration by American or English authorities, but where determined we find no room for appellees' contention. Underhill, in his treatise on the law of wills (1 Underhill, Wills §105), says: "And it is for the jury and not the court to determine upon all the evidence whether a will is or is not unnatural. The judge cannot say, as matter of law, that a will is unnatural because it discriminates between or among the heirs or the next of kin of the testator, of the same degree of relationship; or because it excludes some or all of them and gives the property to

strangers. Whether the will is unnatural must be determined by the jurors weighing all the facts and circumstances, and, having decided that it is unnatural or the reverse, they may take that fact into consideration in ascertaining whether the testator had capacity, and, if so, whether the will is the result of undue influence." In *Henry* v. *Hall* (1894), 106 Ala. 84, 99, 17 South. 187, 54 Am. St. 22, it is said: "Charges 7 and 8 are not only subject to the same criticism, but are faulty in its definition of 'unnatural will.' A will is not necessarily unnatural because of a discrimination between heirs of the same degree, or because of the entire exclusion of a part or all of them. The circumstances of the case must determine the naturalness of a donation or bequest. It can not be said as a matter of law, that affection for one, though not of kin, raised from infancy by the donor and who has always been a member of the family of the donor, is unnatural or that a gift or bequest to such a person is unnatural. It is a question of fact for the jury." See, also, *Burney* v. *Torrey* (1893), 100 Ala. 157, 14 South. 685, 46 Am. St. 33.

Counsel for appellee call our attention to *Murphy* v. *Hoagland* (1908), 107 S. W. (Ky.) 303; *In re Campbell's Will* (1912), 136 N. Y. Supp. 1086, and *In re McCarty's Will* (1910), 141 App. Div. 816, 126 N. Y. Supp. 699. Neither of the cases deals with the question of invasion of the province of the jury by instruction. Each considers the sufficiency of the evidence to support the finding in the court below, and whatever is said in the opinions can have no bearing on the question here involved. Our attention is called to the case of *Bradley* v. *Onstott* (1914), 180 Ind. 687, 103 N. E. 798, where the trial court gave an instruction quite similar to the one here involved. Appellees' coun-

Breadheft *v.* Cleveland—184 Ind. 130.

sel do not claim that there is a direct conflict between the decisions in that case and the original opinion here, but claim that instruction No. 16 referred to in that case had the same infirmity as the one here considered. In that case, the discussion of the instruction is found on page 694. It will be noted it is not there said that appellant was there contending that the instruction was erroneous because it invaded the province of the jury. That no such question was presented is disclosed by a consideration of that record. The opinion does say that instruction No. 16 was not erroneous, but such declaration always implies a lack of error *against the objections urged*, and not a freedom from errors not considered. Consequently the declaration has no legal or logical application to an error, though apparent, which was neither presented by appellant's brief nor considered by the court. It is the duty of this court to consider, for the purpose of reversing a judgment, such questions (and none other), as are properly presented in appellant's original brief. Clause 5, Rule 22 of this court. However, to affirm a judgment, the court may search the record therefor. §§407, 700 Burns 1914, §§398, 658 R. S. 1881. In the *Bradley* v. *Onstott case, supra,* had the court seen fit to point out and discuss the error apparent in the instruction, regardless of the failure of appellants' counsel to present the question, it might properly have called attention to the defect, but had the instruction been declared erroneous, because invading the jury's province, such declaration would have been properly followed by the statement that the error was not a reversible one because a consideration of such defect had been waived by appellants. Petition for rehearing overruled.

Lairy and Cox, JJ., dissent from the conclusion that instruction No. 10 is erroneous.

NOTE.—Reported in 108 N. E. 5; 110 N. E. 662. As to evidence to show intentional omission of child in will, see 50 Am. St. 284. As to unnatural or unjust disposition of estate as evidence of testamentary incapacity, see 13 Ann. Cas. 1044. See, also, under (1) 40 Cyc 1020, 1272; (2, 3) 40 Cyc 1151, 1152; (4) 40 Cyc 1034, 1337; (5) 38 Cyc 1711, 1778; (6) 40 Cyc 997; (7) 40 Cyc 1033, 1034; (8) 40 Cyc 1079; (9) 16 Cyc 1087; 38 Cyc 1747.