POTTER ET AL. *v.* EMERY ET AL.

[No. 16,194.   Filed April 15, 1940.]

James J. Moran, George H. Ward, Raymond R. Tanner, and Albert A. Abromson, for appellants.

Roscoe D. Wheat, and John W. Macy, for appellees.

STEVENSON, J.—The appellee Mamie Emery instituted this action against the appellants and the Citizens State Bank of Ridgeville, Indiana, to set aside and revoke the probate of the last will and testament of Henry Potter, deceased.

The cause was submitted to a jury for trial on the single issue of mental unsoundness of the testator. The jury returned a verdict in favor of the appellee and to the effect that the said Henry Potter, at the time of the execution of the will was of unsound mind. Judgment was rendered upon the verdict declaring the will invalid and setting aside the probate thereof. The appellants have perfected this appeal and have assigned as error the overruling of the appellants' motion for new trial. Under this assignment they chal-

lenge the sufficiency of the evidence to sustain the verdict. Six witnesses testified for the appellee as plaintiff in the trial court, five of whom expressed opinions that the said Henry Potter was a person of unsound mind at the time the will was executed. Eighteen witnesses testified for the appellants as defendants in the trial court to the effect that the testator was a person of sound mind at such time.

The appellants contend that even though the witnesses who testified for the appellee gave as their opinion that the testator was a person of unsound mind at the time of the execution of the will, yet none of them stated any facts which could be reasonably made the foundation for such an opinion. The appellees' evidence abundantly shows that the testator knew the extent and value of his property, the names of all of his children and those that might and ought to be the natural objects of his bounty. He had all of this information at the time his will was prepared and he disposed of all his property, and his wife and children were all named as legatees in his will. These facts are sufficient to establish testamentary capacity.

The rule in this state is well settled as to the degree of mental unsoundness which destroys testamentary capacity. Our Supreme Court in the case of *Wiley* v. *Gordon* (1913), 181 Ind. 252, 265, 104 N.E. 500, announced the rule as to testamentary capacity in the following language:

> "This standard which measures mental testamentary competency is satisfied when it is made to appear that, at the time of the making of the will or codicil, the testator was in possession of sufficient strength of mind and memory to enable him to know the extent and value of his property, the number and names of those who were the natural objects of his bounty, their deserts with

reference to their conduct toward and treatment of him, and to carry these things in mind long enough to have his will prepared and executed.''

In the case before us there is no evidence of any kind that the testator's mind was affected by any delusions or hallucinations. He was a man approximately sixty-one years of age at the time of the execution of the will and lived about six years thereafter. He was a successful farmer and owned and operated about 200 acres of land. He suffered from rheumatism, hardening of the arteries, and Bright's disease during the later years of his life. These ailments were not sufficient to confine him to his bed or interfere materially with the conduct of his business. The witnesses who gave as their opinion that he was of unsound mind stated generally that they had known him many years and had had business transactions with him, some of which had resulted in personal unfriendliness. They stated generally that he was dirty in his person and dress, that he was high-tempered, that he carried grudges against some of his neighbors, that he disliked his son-in-law, the appellee's husband, that he required his wife and daughters to work in the fields, that he slept on the floor behind the stove with his clothes on, that he did not go to public gatherings with his wife or family, never inquired as to the welfare of his grandchildren and sometimes failed to speak to his own children, and at times he had a fixed, ''starey'' look in his eyes. The appellee Mamie Emery testified that during the last six or seven years of her father's life there were occasions when he did not know he had a wife, that he had spells when he would not speak to her and to the other members of his household.

The opinions of these witnesses to the effect that the testator was a person of unsound mind can have

no greater weight than the fact upon which they are based. *Ramseyer, Executor* v. *Dennis* (1918), 187 Ind. 420, 116 N.E. 417; *Rarick et al.* v. *Ulmer* (1895), 144 Ind. 25, 42 N.E. 1099. The question therefore presented is whether or not these opinions are sufficient to support the verdict when considered in the light of the facts upon which they were predicated. As was said by the Supreme Court in the case of *Rarick et al* v. *Ulmer,* supra, page 32:

"Assuming without deciding that such opinions standing alone are sufficient to support the verdict, yet as they do not assume or pretend to furnish any measure or to define the degree of the testator's supposed mental infirmity, and as other parts of appellee's evidence show that testator had mind enough to know the extent and value of all his property, the names of all his children and those that might or ought to be the natural objects of his bounty and was able to hold all these in his mind long enough to dictate and have his will prepared, testamentary capacity is shown by appellee and therefore there is a total failure of evidence to establish testamentary incapacity. There is no conflict between those opinions of unsoundness of mind, if such opinions may be so classed, and the other parts of the appellee's evidence showing testamentary capacity."

In the light of this authority it is our opinion that the evidence on the question of lack of testamentary capacity is not sufficient to sustain the verdict.

There is no testimony to the effect that at the time of the execution of the will the testator did not know the extent and value of his property nor the number and names of those who were the natural objects of his bounty. It is true that his will gave each of his daughters the income from only $50.00 in trust, and that his wife was given a life estate in only eighty acres of his land. The remainder

of his property he gave to his son. While the bequests to his daughters were nominal, yet we cannot say that he did not know of or intend such disposition. The jury who tried this case might well have felt that his treatment of his family was harsh, but such fact, if true, does not support a charge of mental unsoundness, such as destroys testamentary capacity. A great number of witnesses consisting of neighbors, friends and business associates testified as to the mental soundness of the testator.

We have read the evidence in its entirety and are forced to conclude that there were no facts proven sufficient to warrant the jury in arriving at the conclusion which they reached in this case. In view of this fact, we deem it unnecessary to discuss further assignments of error involving the giving and refusal of certain instructions.

Judgment of the trial court is reversed with instructions to sustain the appellants' motion for new trial.

Curtis, J., dissents.

Laymon, J., concurs in result.