IRWIN UNION BANK AND TRUST COMPANY ET AL; *v.*
SPRINGER ET AL.

[No. 19,990. Filed April 1, 1965. Rehearing denied May 10, 1965. Transfer denied June 14, 1965.]

*Walker and Connor, Charlton J. Walker,* and *William A. Conner,* of Columbus, for appellants.

*Allen E. Goltra* and *Goltra and Kershaw,* of Columbus, for appellees.

SMITH, J.—This appeal comes to us from the Bartholomew Superior Court wherein the Appellees brought an action against the Appellants to contest the validity of the last will and testament of one Joseph W. Springer, deceased. The cause was tried by a jury and resulted in a verdict for the Appellees, upon which the trial court rendered judgment setting aside the will.

Action of the trial court in overruling Appellants' Motion for New Trial is assigned as error. The Appellants assert two specific errors upon which they rely for reversal:

1. the verdict of the jury is contrary to law because of the lack of substantial evidence of probative value to sustain the verdict; and

2. the Court erred in refusing to give Defendants' Instruction No. XI.

The Appellees allege in their complaint that the last will and testament of Joseph W. Springer, deceased, was invalid because of the following reasons:

1. said pretended will was unduly executed;
2. said pretended will was executed under duress;
3. said pretended will was obtained by fraud; and
4. that, at the time of the alleged execution of said pretended will, the testator was a person of unsound mind.

At the close of Appellees' evidence, the Appellants filed a motion to withdraw certain issues from submission and consideration of the jury, namely, (1) said pretended will was unduly executed, (2) said pretended

will was obtained by fraud, and (3) said pretended will was executed under duress. The trial court sustained Appellants' motion and, by written instruction, did withdraw said issues from the consideration of the jury. This left only one issue remaining for the jury to determine, i.e., was Joseph W. Springer a person of sound mind on September 20, 1957, the date of the execution of the pretended will?

The law is well settled in this state and it is firmly established as a legal principle that the term "unsound mind," when applied as a test of the mental capacity of a testator to make a will, means a degree of unsoundness of mind which does not measure up to the standard of testamentary competency generally recognized by law. It appears from an examination of the authorities in this state, hereinafter cited, that the measure of mental testamentary capacity is whether or not, at the time of making the will, the testator was in possession of sufficient strength of mind and memory to enable him to know the extent and value of his property, the number and names of those who are the natural objects of his bounty, their deserts with reference to their conduct toward and treatment of him, and whether he was able to carry these things in mind long enough to have his will prepared and executed. In other words, if a testator, at the time of executing his last will and testament, knows the extent and value of his property, knows the names and number of those who are the natural objects of his bounty, knows their deserts with reference to their treatment of him, and has the mental capacity to carry these things in mind long enough to have his will prepared and executed, he has sufficient mental capacity to make a will. *Rarick et al.* v. *Ulmer* (1896), 144 Ind. 25, 42 N. E. 1099;

*Wiley* v. *Gordon* (1914), 181 Ind. 252, 104 N. E. 500; and *Potter et al.* v. *Emery et al.* (1940), 107 Ind. App. 628, 26 N. E. 2d 554.

The Appellees do not refute this principle of law. However, they emphatically maintain that the testator, Joseph W. Springer, did not meet the standards of testamentary mental capacity as measured by this rule and as evidenced by the testimony of witnesses who testified that the testator was a person of unsound mind at the time of the execution of the will. Therefore, it is their contention that there was substantial evidence of probative value to sustain the jury's verdict, which evidence this Court is required to consider in spite of other evidence to the contrary. The Appellees further contend that, although there was evidence to the contrary, this Court cannot weigh the evidence. They say in substance that, on appeal, a cause will not be reversed because of the insufficiency of the evidence unless it appears, not merely that the verdict or finding is contrary to the weight of the evidence, but that there is *absolute failure* of the evidence on some material point; and that an appellate tribunal has no power to weigh conflicting evidence—it can only consider the evidence most favorable to an appellee in deciding the question of whether there is any evidence to support the verdict of the jury. To support their contention they cite the following cases: *Polk Sanitary Milk Co.* v. *Berry* (1938), 106 Ind. App. 29, 17 N. E. 2d 860; *Davisson* v. *Dustin* (1919), 69 Ind. App. 444, 122 N. E. 15; *Roper* v. *Cannel City Oil Co.* (1918), 68 Ind. App. 637, 121 N. E. 96; *Christy* v. *Holmes* (1877), 57 Ind. 314; and *Lowry* v. *Indianapolis Traction Co.*, (1921), 77 Ind. App. 138, 126 N. E. 223.

The Appellants herein recognize the rule that upon appeal, this Court cannot weigh the evidence and can-

not resolve any conflicts in the evidence. However, Appellants do disagree with Appellees' application of the law contained in cited cases to the evidence in the instant case; and maintain that none of the cases cited by Appellees involve a will contest action of any nature wherein the soundness or unsoundness of mind of the testator was the issue to be decided.

Admitting it to be the established rule of law in this state that an appellate tribunal cannot weigh the evidence, the Appellants urge and claim that the opinions of the nonexpert witnesses evidencing the fact that the testator was of unsound mind at the time he executed the purported will, can have no greater weight than the facts upon which such opinions are based. To support this contention, the Appellants rely heavily upon the decision of the Supreme Court in *Rarick et al* v. *Ulmer, supra.* The facts in the Rarick case disclose that a few of appellees' witnesses who were non-experts gave as their opinion that the mind of the testator was not very strong, and that his mind had weakened and perhaps was not entirely sound. None of them stated any fact which could be reasonably made the foundation of an opinion that the testator was of unsound mind. While on the other hand, appellees' evidence clearly disclosed that the testator knew the extent and value of his property, the names of all his children and that he could hold these in mind long enough to have his will prepared. The court held:

"It is settled law that insanity or unsoundness of mind cannot be proven by a witness who is not an expert, unless the witness first gives facts upon which his opinion is based."

The Court further said:

" . . . neither is there any evidence to support the

charge of unsoundness of mind, except the opinions of very few witnesses who were non-experts already mentioned. Assuming without deciding that such opinions standing alone are sufficient to support the verdict, yet as they do not assume or pretend to furnish any measure or to define the degree of the testator's supposed mental infirmy, and as other parts of appellees' evidence show that testator had mind enough to know the extent and value of all his property, the names of all his children and those that might or ought to be the natural objects of his bounty and was able to hold all these in his mind long enough to dictate and have his will prepared, *testamentary capacity is shown by appellee and therefore there is a total failure of evidence to establish testamentary incapacity.* There is no conflict between those opinions of unsoundness of mind, if such opinions be so classed, and the other parts of the appellees' evidence showing testamentary capacity." (emphasis supplied)

With this principle of law this Court is in full accord. It remains only for this Court to examine the testimony of certain non-expert witnesses who testified as to the testamentary mental capacity of the testator. And, after such examination, determine whether such evidence was based on facts which could reasonably be made the foundation of any opinions given by the witnesses. If we can find no evidence of such facts, the evidence of the Appellees showing that the testator was a person of sound mind at the time of the execution of the will stands unrefuted and not in conflict with the Appellants' evidence. Under these circumstances this Court is not called upon to weigh the evidence.

From an examination of the evidence, most favorable to the Appellees, and the reasonable inferences to be drawn therefrom, the facts disclosed are as follows:

Six witnesses testified for the Appellees as plain-

tiffs in the trial court, only four of whom expressed an opinion that Joseph W. Springer was a person of unsound mind at the time the purported will was executed. One of these four witnesses, Hazel Egbert, sister of the testator, stated that she had not seen nor visited with her brother from 1952 until his death in 1960. Another of these four witnesses, Anita Norton, the testator's first wife and the mother of the testator's two sons, the Appellees Robert Springer and William Springer, testified that she had not seen or talked to the testator since 1949. The remaining two of these witnesses, the two sons of the testator, filed this action to contest his will.

The only witnesses produced by the Appellees who testified the testator was a person of unsound mind were those persons who had a direct interest in the outcome of this action. There were no disinterested, unbiased, or unprejudiced witnesses produced that testified that the testator was a person of unsound mind. The two disinterested witnesses that were called by Appellees were not asked and did not express an opinion as to his testamentary capacity. There were no other disinterested witnesses, i.e., neighbors, friends, and business associates, who testified that the testator was a person of unsound mind.

On the other hand, the Appellants as defendants in the trial court, produced the evidence of fourteen witnesses, consisting of testator's attorney, trust officer of the bank named as trustee in the will, minister, physician, neighbors, friends and business associates, all of whom testified that the testator was a person of sound mind at the time of the execution of the will. All of the facts testified to by witnesses for Appellants show that the mental faculties of the testator were not impaired, that he was physically normal, that he

was and had been employed in responsible positions, that he looked after his property, that he was happily and contentedly married, and that he conclusively and amply possessed testamentary capacity within the standards recognized by law.

There was no evidence produced showing that testator's mind was impaired or affected by any delusions or hallucinations. There was no evidence that the testator did not know the extent and value of his property, nor the names and number of the natural objects of his bounty, and their just deserts. There was no evidence that the testator was not capable of looking after his property and business affairs. There was no evidence that there was an unpleasant relationship between the testator and his two sons, or that he was not interested in them and their welfare.

In *Potter et al* v. *Emery et al, supra,* this court said:

"In the case before us there is no evidence of any kind that the testator's mind was affected by any delusions or hallucinations. He was a man approximately sixty-one years of age at the time of the execution of the will and lived about six years thereafter. He was a successful farmer and owned and operated about 200 acres of land. He suffered from rheumatism, hardening of the arteries, and Bright's disease during the later years of his life. These ailments were not sufficient to confine him to his bed or interfere materially with the conduct of his business. The witnesses who gave as their opinion that he was of unsound mind stated generally that they had known him many years and had had business transactions with him, some of which had resulted in personal unfriendliness. They stated generally that he was dirty in his person and dress, that he was high-tempered, that he carried grudges against some of his neighbors, that he disliked his son-in-law, the appellee's husband, that he required his wife and daughters to work in the fields, that he slept on the floor behind the stove with his clothes on, that he did not go to

public gatherings with his wife or family, never inquired as to the welfare of his grandchildren and sometimes failed to speak to his own children, and at times he had a 'starey' look in his eyes. The appellee Mamie Emery testified that during the last six or seven years of her father's life there were occasions when he did not know he had a wife, that he had spells when he would not speak to her and to the other members of his household."

The court here held that there was insufficient evidence to sustain the verdict and that the testator was of sufficient mental capacity to execute his will.

From the examination of the evidence in the instant case, it is the opinion of this Court that none of the witnesses testified to any facts which could be reasonably made the foundation of an opinion that the testator was of unsound mind; and there were no sufficiently proven facts to warrant the jury in arriving at its verdict finding the last will and testament of Joseph W. Springer to be invalid.

Appellants also urge that the "Court erred in refusing to give Instruction Number XI requested by the Defendants herein." In the light of our holding that the verdict of the jury was not sustained by sufficient evidence and therefore was contrary to law, it will not be necessary to decide this question.

Judgment of the trial court is reversed and the cause is remanded with instructions to sustain the motion for a new trial.

Bierly, P.J., Hunter and Mote, JJ., concur.

NOTE.—Reported in 205 N. E. 2d 562.