## THE INDIANAPOLIS, PERU, AND CHICAGO RAILWAY COMPANY *v.* ANTHONY.

<div style="float:right">43 183<br>138 315</div>

CORPORATION.—*Liability for Acts of Agents.*—A corporation is liable for the wilful acts and torts of its agents committed within the general scope of their employment, as well as acts of negligence; and the corporation is thus bound, although the particular acts have not been previously authorized or subsequently ratified by the corporation. The act of the agent within the general scope of his employment is the act of the master, and if wrongful, the master is liable, although the act be unnecessary to the performance of the master's service, and was not intended for that purpose. The liability of the master does not depend upon the necessity of the act or the intent with which it was done, but upon whether the act was wrongful and within the general scope of the employment of the agent.

SAME.—*Railroad.*—*Evidence.*—In a trial for damages for the alleged wrongful ejectment of a passenger from a railway train, it is competent for a witness who was present to state what he heard said on the occasion of such expulsion, leaving it to others to identify the persons who made the statements.

DEPOSITION.—*Motion to Suppress.*—A court should not sustain a motion to sup-

press the whole or a part of a deposition, if it would be admissible in rebuttal, although not admissible in the first instance.

IMPEACHMENT OF WITNESS.—In a deposition to impeach a witness, to the question, "Is that character good or bad?" the answer was, "It is bad anywhere, and always was; I would not believe him on oath." A motion to strike out all of this answer but the words, "It is bad," should have been sustained.

SAME.—When a female has testified to certain indecent conduct toward herself, evidence relating to her general character for truth, veracity, and chastity is admissible, to impeach her.

EVIDENCE.—*Railroad.*—*Ejection of Passenger.*—It is competent for a party who has been forcibly ejected from a railway train, in a suit for damages for such ejection, to prove what was the state of his health and the condition of his clothing shortly after his expulsion from the train, as tending to show the character of the treatment he received from the employees of the road and the danger to which he was subjected by reason of his sickness and exposure; but his own statements to a witness as to such condition of his clothing and what caused it are not admissible.

SAME.—*Harmless Error.*—Although evidence has been improperly admitted, the judgment will not for that reason be reversed, if the same facts were clearly and unmistakably proved by other competent testimony.

From the Howard Common Pleas.

*D. Moss,* for appellant.

*J. O'Brien* and *W. O'Brien,* for appellee.

BUSKIRK, J.—The appellee sued the appellant, to recover damages for his unlawful and wrongful expulsion from the cars of the appellant by her agents and employees in charge of such train of cars.

The complaint consisted of three paragraphs. The appellant moved to strike out certain portions of each paragraph, but the motion was overruled, and the exception is reserved by a bill of exceptions. The appellant demurred to each paragraph. The demurrers were overruled, and the appellant excepted, but the assignment of error only calls in question the correctness of the ruling as to the first and second paragraphs. The appellant answered in two paragraphs. Upon the motion of the appellee, the second paragraph was stricken out, and the question is presented by a bill of exceptions. Separate errors have been assigned upon the refusal of the court to strike out parts of

the complaint, upon the overruling of the demurrer to the first and second paragraphs of the complaint, and upon the action of the court in striking out the second paragraph of the answer.

We do not deem it necessary to set out in full the several parts of the complaint sought to be stricken out. It will be sufficient to set out that portion of the third paragraph which was embraced in the motion, and which is as follows:

" He was taken hold of in a rude and violent manner by the conductor and other employees of the defendant in the said train, and was forcibly removed from his seat in a rough and violent manner, and was forcibly ejected from said car; and that he was thrown and pushed from the step of said car, a distance of several feet, into a pit, commonly called a cow-pit, whereby he was greatly injured in manner and form as follows, to wit: by having his ankle severely sprained, so much so that he has since been unable to use the same; and plaintiff avers that at the time of being ejected from the car of the defendant, he was greatly enfeebled and very weak from disease, so much so that he was wholly unable to resist the assaults of the agents of the defendant, or to protect himself from injury as aforesaid; the plaintiff was then and there greatly hurt, bruised, and wounded, and became and was sick, sore, lame, and disordered, and so remained and continued to the time of the filing of this complaint, during all which time the plaintiff thereby suffered and underwent great pain, and was hindered and prevented from performing his necessary affairs and business, and was forced to and did pay, lay out, and expend five hundred dollars in and about endeavoring to be cured."

The reason assigned for the motion was, that the portion above set out charges a wilful and malicious trespass on the part of the employees of the defendant, without showing the same was expressly authorized by the defendant, or that the defendant subsequently adopted or ratified said acts of said employees.

The substance of the second paragraph of the answer

was, "that the said wrongful acts were not demanded or directed by the defendant or afterward ratified or adopted by the defendant, and that such wrongful acts of such conductor and other employees were unnecessary to the performance of the defendant's service, and were not really intended for that purpose, but the same were so done and performed wilfully and maliciously, in violation of their said duty, merely to gratify their own malice, through and under pretence of executing said employment, and not to serve the defendant."

The learned counsel for appellant has argued this question solely upon the theory that the acts performed by the agents of the appellant were wholly disconnected from the performance of their duty.

He says, "This question is presented on each of these rulings: 'Will an action lie against a master for the wilful and malicious trespass of a servant, not commanded or ratified by the master, but perpetrated to gratify the private malice of the servant, under mere color of discharging the duty which he has undertaken for the master?"

Counsel for appellant denies that an action could be maintained under the facts and circumstances stated; and in support of such proposition, reference is made to *The Evansville and Crawfordsville Railroad Company* v. *Baum*, 26 Ind. 70, and adjudged cases in other states. The proposition, restricted and limited as it is, seems to be supported by the above case, but it does not state the question decided in that case or involved in the one under consideration. In the above case, the court, after stating the law to be as laid down in the above proposition, proceed to say: "It is not to be understood, however, that the master is never liable for the wilful and malicious acts of the servant, unless he has directed those specific acts to be done. The rule is not so broad as that. If the act of the servant complained of was necessary to be done to accomplish the purpose of the servant's employment—if it was essential as a means to attain the end directed by the master, and was intended for that

purpose, then it was implied in the employment, and the master is liable, though the servant may have executed it wilfully and maliciously. But when it is unnecessary to the performance of the master's service, and not really intended for that purpose, but is committed by the servant merely to gratify his own malice, though under the pretence of executing his employment, it is not done to serve the master, and is not, in fact, within the scope of the employment, and the master is, therefore, not liable."

The proposition as stated by counsel for appellant wholly disconnects the acts of the servant from the performance of any duty connected with his employment. In such case the servant would alone be responsible for his wilful and malicious acts; but the rule is otherwise, where the act performed by the servant comes within the general scope of his employment. In such case the master is liable, though the servant may have executed it wilfully and maliciously.

This view is fully supported and sustained by the recent decision in the case of *The Jeffersonville Railroad Co.* v. *Rogers*, 38 Ind. 116. In that case WORDEN, C. J., in speaking for the court, says:

"We think it is well settled that a corporation is liable for the wilful acts and torts of its agents committed within the general scope of their employment, as well as acts of negligence; and that the corporation is thus bound, although the particular acts were not previously authorized, nor subsequently ratified, by the corporation. Thus, in a late case, *Ramsden* v. *Boston and Albany R. R. Co.*, 104 Mass. 117, it is held that a railroad corporation is responsible for an assault and battery by the conductor of one of its trains upon a a passenger in seizing or attempting to seize his property to enforce payment of fare. We quote the following passages from the opinion of the court in that case:

"'A railroad corporation is liable, to the same extent as an individual would be, for an injury done by its servant in the course of his employment. *Moore* v. *Fitchburg Railroad Corporation*, 4 Gray, 465; *Hewett* v. *Swift*, 3 Allen, 420;

*Holmes* v. *Wakefield*, 12 Allen, 580. If the act of the servant is within the general scope of his employment, the master is equally liable, whether the act is wilful or merely negligent; *Howe* v. *Newmarch*, 12 Allen, 49; or even if it is contrary to an express order of the master. *Philadelphia and Reading Railroad Company* v. *Derby*, 14 How. 468. The conductor of a railroad train, from the necessity of the case, represents the corporation in the control of the engine and cars, the regulation of the conduct of the passengers, as well as of the subordinate servants of the corporation, and the collection of fares. He may even eject a passenger for not paying fare. *O'Brien* v. *Boston and Worcester Railroad Company*, 15 Gray, 20. It has been adjudged by this court that if, in the exercise of his general discretionary authority, he wrongfully ejects a passenger who has in fact paid his fare, or uses excessive and unjustifiable force in ejecting a passenger who has not paid his fare, and injures him by a blow or kick, or by compelling him to jump off while the train is in motion; in either case, the corporation is liable.'

"We deem it unnecessary to cite further authorities upon this point. The principle lying at the foundation of the doctrine is as old as the common law, and is embodied in the maxim, *qui facit per alium, facit per se*, and is as applicable to corporations as to individuals. Doubtless, if a servant or agent commit a tort out of the scope of his agency or employment and not connected with it, the principal would not be liable therefor unless he previously authorized or subsequently ratified the act. Such, however, is not the case here."

The obvious purpose of the pleader was to bring the case within the rule stated in the case of *The Evansville, etc., R. R. Co.* v. *Baum, supra.* It is said in that case that if the act performed by the agent is "unnecessary to the performance of the master's service, and not really intended for that purpose, but is committed by the servant merely to gratify his own malice, though under the pretence of executing his

employment, it is not done to serve the master, and is not, in fact, within the scope of the employment, and the master is, therefore, not liable."

By the above ruling the liability of the master is made to depend upon whether the act performed was necessary to the performance of the master's service, and whether the act was really intended for that purpose. The liability of the master is made to depend partly upon the necessity of the act, and partly upon the intent with which the act was done. The conductor of a railroad train has the the right to eject a passenger for a refusal to pay his fare, or for indecent and disorderly conduct. The act of the conductor in ejecting a passenger, for either of the above causes, would come within the general scope of his employment, and the master would be liable, if the act was wrongful, without reference to the question of whether the purpose of the conductor was to serve his master or to gratify his private malice. The intent of the conductor should not have any influence upon the question of the liability of the master, where the act performed comes within the general scope of his employment. If, in the case supposed, the passenger refuses to pay his fare, or is guilty of indecent conduct, and the conductor for such cause ejects him from the train, the act would come within the general scope of his employment, and the master would not be liable, although the agent was actuated by private malice, because the conduct of the passenger justified the act. If, on the other hand, the conductor should be misinformed as to the conduct of a passenger and in reliance upon such information should eject him, the master would be liable, although the agent had no private malice, but was actuated solely by an earnest desire to serve his master. The act of the agent within the general scope of his employment is the act of the master, and whether the act was necessary to be done, will depend upon the facts surrounding it. If the act done is within the general scope of employment, and is wrongful, the master is liable, although the act was unnecessary to the performance

of the master's service, and was not intended for that purpose. We therefore think that the liability of the master does not depend upon the necessity for the act or the intent with which it was done, but upon whether the act was wrongful and within the general scope of the employment of the agent. We are of opinion that the court committed no error in overruling the motion to strike out parts of the complaint or in sustaining the motion to strike out the second paragraph of the answer.

The only objection urged to the sufficiency of the first and second paragraphs of the complaint is, that " it is not shown in either that the appellant was under any obligations to transport the appellee from the city of Indianapolis to Noblesville, either with or without a ticket." The objection is very general and does not merit much consideration. It is alleged in the first and second paragraphs of the complaint, that the plaintiff purchased and paid for a ticket from Indianapolis to Noblesville, and had taken passage on the cars. In the first, the time and place of purchase are named. In the second, it is said that the plaintiff having purchased a ticket and taken passage on the cars as aforesaid, he was, etc.

We think there is nothing in the objection to the complaint.

The defendant moved to suppress the answers to the fourth and fifth questions in the deposition of Solomon Meaker, which were as follows:

" Question 4th. What do you know, if any thing, about a man being put off the train in the vicinity of James' Switch, on the evening referred to ?"

" Answer. I was in the forward car; there was a fuss in the car behind me, some loud talk and swearing; heard talk of putting a man off the train ; as I understood, the conductor had put a man off the train."

" Question 5th. State what protest, if any, was made by the man ejected from the train."

" Answer. I understood the conductor was accusing the

The Indianapolis, Peru, and Chicago R. W. Co. *v.* Anthony.

man of feeling a woman's leg illegally, without her consent, and the man denied it; said he was not guilty; the conductor insisted on putting him off, and finally did put him off. The man stated he was sick, and did not want to be left there in the woods; he wanted to remain on the train until he got to Noblesville; did not see either of the parties; can't state the name of either; do not know whether it was the conductor or not."

The court overruled said motion, except as to the following portion of said motion: "I understood that the conductor was accusing a man of feeling a woman's legs illegally, without her consent."

We think there was no error in the ruling of the court. It was competent for the witness to testify to what he heard, leaving it to others to identify the persons who had made the statements.

The defendant moved to suppress the fourth question and answer in the deposition of Martin S. Barnhiser, which were as follows:

"Question 4th. State what conversation, if any, you had with the conductor above alluded to in regard to Francis M. Anthony having been put off the above named train, on the 13th day of August, 1869."

"Answer. Butler and I were on the train coming from Indianapolis. Shortly after occurrence the conductor came to us; his conversation was mostly with Butler; he was telling the circumstances over; he afterward said to me that in putting him off he either hesitated in his mind or stopped with him; he said Anthony protested his innocence; he said, damn it, if he was guilty he would have said the same; he said his plea of innocence was so short that it made him (the conductor) hesitate; said he thought in his own mind, that any person who would be guilty of such conduct would lie about it."

The motion was overruled, counsel for appellant has not pointed out any valid objection to the testimony, and we have not been able to see any. There was no objection

made to the reading of the deposition of this witness in evidence. The court should not sustain a motion to suppress the whole or a part of a deposition, if it would be admissible in rebuttal, although not admissible in the first instance.

The defendant also moved to suppress the second question and answer in the deposition of R. R. Shield.

The question and answer were in substance the same as those above set out in the deposition of Barnhiser, and our ruling is the same.

The defendant also moved to suppress a portion of the answer to the fourth question in the deposition of James M. Brown.

The witness had been asked whether he was acquainted with the general character for truth and veracity of Solomon Essery, and had answered that he was. The fourth question and answer were then as follows:

"Question 4th. Is that character good or bad?"

"Answer. It is bad (anywhere and always was). I would not believe him on his oath."

The motion was to strike out all the answer except the words "it is bad."

We think the court should have sustained the motion, but we are unable to see how the appellee was injured by the refusal of the court to strike out the irrelevant portion of the answer; if the character of the witness was bad in the neighborhood of his residence, it could not be made worse by proving it was bad elsewhere.

The defendant also moved to suppress the sixth, seventh, and eighth questions and answers of the direct examination of Joseph Leatherman, and the third, fourth, fifth, sixth, and seventh questions and answers of the direct examination of the following named witnesses, to wit: Bowels, Anderson, Gassonway, Vallannigham, Deford, and Evans.

The above questions and answers related to the general character of Mrs. Elizabeth Essery for truth and veracity and chastity. Mrs. Essery had testified on behalf of the defendant, that she was in the same car with the plaintiff at

The Indianapolis, Peru, and Chicago R. W. Co. *v.* Anthony.

the time he was put off the train ; that the plaintiff had put his arm under the seat, and had taken hold of her leg ; that she had informed the conductor of such train of such indecent conduct on the part of the plaintiff; and that the conductor had for such conduct put the plaintiff off the train. The testimony objected to was offered for her impeachment. It was clearly competent and admissible.

The appellant also assigns for error the action of the court in suppressing, on the motion of appellee, the second and fourth questions and answers in the deposition of David Macy.

This assignment of error presents no question for our decision, for the reason that such questions and answers are not copied into the bill of exceptions. Such questions and answers having been stricken out, and not having again been put in the record by the bill of exceptions, we have no means of knowing what they were, and consequently presume that the ruling of the court below was correct.

The deposition of Macy read in evidence contains only the first and third questions and answers, the second and fourth having been previously stricken out.

The appellant has also assigned for error the overruling of the appellant's motion to suppress the third, fourth, fifth, and sixth questions and answers contained in the deposition of Joseph Fetrow, which are as follows :

"Question 3d. You may state what time in the night Mr. Anthony came to your house, and what was the condition of his health if you know."

"Answer. As near as I can recollect, it was between 8 and 9 o'clock when he came ; then he seemed to be suffering a great deal, and was complaining of his foot and ankle being bruised ; he asked if we had some warm medicine to give him, something hot. We made him pepper tea ; it didn't seem to do him any good ; he had some medicine he had got from Dr. Howard in town, and he took that."

"Question 4th. You may state, if you please, if you

know, what disease he seemed to be laboring under; how long he remained at your house; and what his condition was during that time."

" Answer.   He seemed to have the cholera morbus, and suffered very much during the night, and did not sleep any; he stayed with me all night and until six o'clock next morning, and he did not seem any better when he left me."

" Question 5th.   You may state whether or not you examined his clothing, and if you did what was the condition of them."

" Answer.   I noticed his clothing, and they were wet; I asked him how he got them wet, and he said they throwed him into the ' cow-pit.' "

" Question 6th.   If you know, state to what extent his clothing were wet."

" Answer.   He was wet up to about his body."

It is necessary to a proper understanding of the testimony of this witness that we should copy the second question propounded to him and his answer thereto, which were as follows :

" Question 2d.   You may state whether you are acquainted with the parties to this suit."

" Answer.   I never saw Mr. Anthony until he came to my house to stay all night, some time in August, but don't remember just when it was.   I have no acquaintance with the railroad company."

It was abundantly proved by other evidence on the trial of the cause, that the plaintiff, after being put off the train, applied at several houses for permission to stay all night, but was refused.   Finally, he applied at the house of Mr. Fetrow, who consented to keep him over night.   We think it was entirely competent for the plaintiff to prove what was the state of his health and the condition of his clothing shortly after his expulsion from the train, as tending to show the character of the treatment that he had received from the employees of the appellant and the danger to which he had been subjected by reason of his sickness and exposure.   A

portion of the answer to the fifth question should have been stricken out, and that reads as follows : " I asked him how he got them wet, and he said they throwed him into the cow-pit."

But we cannot for that error reverse the judgment, because it was clearly and unmistakably proved by the testimony of other witnesses that the plaintiff, in getting off, or in being pushed off the train, fell into the " cow-pit," which was full of water, and got his clothing wet.  The answer complained of did not injure the appellant.  The error was a harmless one.

We think the court commited no error in overruling the motion to suppress the depositions.

It is next assigned for error that the court erred in overruling the motion for a new trial.

One of the reasons assigned for a new trial was the refusal of the court to give to the jury the fifth and sixth instructions asked by the appellant.

The fifth instruction was as follows :   " If you further find from the evidence that the plaintiff was wrongfully expelled from the defendant's cars, but that the conductor and employees who so expelled him acted in good faith under the firm but mistaken belief that he was guilty of the inde-cent and disorderly conduct charged in the defendant's answer, he will not be entitled to recover vindictive or punitive damages against the company, unless they expressly or impliedly participated in the tortious act."

The above instruction presents, in substance, the same question as the one we have already considered and decided. The court was asked to say to the jury that the measure of damages did not depend upon the conduct of the conductor and other employees, but upon whether the company participated in the tortious acts of its employees.  The instruction as asked ignores the fact that it was the duty of the conductor, when the appellee denied the charge of indecent conduct, to have made inquiry and ascertained the truth of the charge made against him.  If the conductor acted in

good faith and without malice or oppression, though he was mistaken as to the conduct of the appellee, and used no more force or violence than was necessary to eject the appellee from the cars, these matters properly went in mitigation of damages, and the jury were so charged by the court, but the measure of damages did not depend upon whether the company participated in or ratified the acts of its agents.

The sixth instruction asked and refused was as follows: "If the jury find from the evidence, that in fact, no physical force was actually used by the conductor of the defendant's train in expelling the plaintiff at the time complained of, but that the plaintiff carelessly sprained his ankle in stepping off the cars, the defendant is not liable for the consequences resulting to the plaintiff from that accident."

We think the instruction was properly refused, upon several grounds.

In the first place, it was charged in the complaint that the conductor and other employees, with force and violence, expelled the plaintiff from the cars, and it was proved that a brakeman was present and assisted the conductor. The instruction as asked limits the use of force to the conductor, thus ignoring the force which may have been used by other employees.

In the second place, there was no evidence which justified the instruction. The conductor and brakeman swore they did not use force, but in this they were contradicted not only by the witnesses of the plaintiff, but by some of the witnesses of the defendant. There was no evidence proving or tending to prove that the plaintiff was guilty of any carelessness or want of care in getting off the cars. As the plaintiff left the cars upon compulsion, and not voluntarily, the degree of care used should not be measured with great nicety. We think the court committed no error in refusing to give the fifth and sixth instructions asked.

Finally, it is earnestly insisted that the verdict was excessive and not sustained by the evidence.

We do not think so. We have carefully read all the evi-

dence, and are entirely satisfied that it fully supports the verdict. The appellee was dangerously sick and was lying down on his seat. A female passenger informed the conductor that the appellee had put his arm under the seat and had taken hold of her ankle. When the appellee was informed of the charge, he promptly denied it. The conductor made no inquiry of other passengers, but stopped the train in the woods, in the night-time, and with the assistance of other employees forcibly ejected the appellee from the cars. The appellee fell into a cow-pit full of water and sprained his ankle. The appellee informed the conductor that he was very sick, and requested that he might be permitted to ride in the smoking car, but his request was refused, and he was ejected and compelled in his weak and enfeebled condition from sickness, and with a sprained ankle and wet clothes, to wander from house to house, in the night-time, and in a strange locality, seeking some place to stay. He was confined for several weeks by his ankle and put to much expense, besides his physical suffering and mental anxiety. It was very clearly proved on the trial that the appellee was not guilty of any indecent or improper conduct, which fact the conductor might have learned by inquiry. The zeal of the conductor was not tempered with wisdom and prudence.

We are not prepared to say that the verdict was, under the circumstances, excessive. We think it was fully justified by the evidence.

The judgment is affirmed, with costs.