POLK SANITARY MILK COMPANY ET AL. *v.* BERRY.

[No. 15,882. Filed December 20, 1938.]

*W. E. Bussell, W. Dale Rafferty,* and *Oscar C. Hagemier,* for appellants.

*Jackson & Hinchman, James L. Kaufman,* and *Omer Stokes Jackson,* for appellee.

LAYMON, J.—Appellee recovered a judgment for damages against the appellant Polk Sanitary Milk Company and Raymond Schaeffer.

The complaint, which was in one paragraph, proceeds on the theory that Schaeffer, as agent and employee of the Polk Sanitary Milk Company, and while acting within the scope of his agency and employment, wilfully and maliciously committed an assault and battery upon the person of appellee, resulting in the injuries complained of. To this complaint the appellant Polk Sanitary Milk Company filed an answer in general denial. The cause was submitted for trial to the court and jury, resulting in a verdict and judgment awarding appellee damages. In due time appellant Polk Sanitary Milk Company filed its separate motion for a new trial which was overruled. It is the action of the trial court in ruling upon this motion which is assigned as

error for reversal. The grounds in said motion duly presented are: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) the damages are excessive; (4) the court erred in refusing to give, after the submission of plaintiff's evidence, a peremptory instruction to return a verdict in favor of the defendant Polk Sanitary Milk Company, a corporation; (5) the court erred in refusing to give, after the submission of all the evidence, a peremptory instruction to return a verdict in favor of the defendant Polk Sanitary Milk Company, a corporation; (6) error of the court in refusing to give instruction No. 3 tendered by the defendant Polk Sanitary Milk Company, a corporation; (7) error in permitting one Berkley Tracy, a minor, to testify as a witness in the cause.

Appellant, in challenging the sufficiency of the evidence to sustain the verdict and the action of the trial court in refusing to instruct the jury to return a verdict in its favor, asserts that "all of the evidence in this cause is to the effect that in the commission of the alleged personal injury to the appellee by one Raymond Schaeffer, an employee of the appellant, Polk Sanitary Milk Company, a corporation, said employee acted outside the scope of his employment, and that all of his acts in reference to the appellee were not authorized or directed by the Polk Sanitary Milk Company and were not done or performed for the purpose of carrying out any business for the benefit of or in the interest of the appellant, Polk Sanitary Milk Company, a corporation"; that all of the evidence is to the effect that said Raymond Schaeffer "stepped outside of the general scope of his employment and was not engaged in any business of the appellant, Polk Sanitary Milk Company, when he became involved in an altercation with the appellee and

committed the alleged tortious acts against the appellee."

It must be conceded at the outset that one of the material allegations of the complaint is that the appellant milk company committed an assault and battery on appellee, by and through the act of its servant while acting in the line of his duty and within the scope of his employment; that if there was no proof of this material allegation nor any evidence from which the fact might properly be inferred by the jury, then there was a total failure of proof to support the material allegation of the complaint, and it was the duty of the trial court to direct a verdict for the appellant milk company.

The evidence, so far as pertinent to the question of imposing any liability on the part of the appellant milk company, by reason of the acts and conduct of its agent, Schaeffer, who was at the time in the employ of said milk company, discloses that immediately prior to the altercation between appellee and Schaeffer, Schaeffer came to the residence of one Catherine Linder for the purpose of collecting for milk which had been previously sold and delivered to her by the milk company; that he was at the time in the employ of the milk company and acting within the scope of his employment; that on the day in question he had driven the milk wagon belonging to the Polk Sanitary Milk Company up in front of the Linder residence, and, after collecting from Mrs. Linder, and while on the front steps preparatory to returning to his truck, he observed two women, appellee and a Mrs. Bierrault, nearby engaging in an altercation; that the controversy which incited the altercation between the two women had no connection whatsoever with the business of the appellant milk company, nor the discharge or performance of any duty incumbent upon Schaeffer, as its agent, to perform; that Schaeffer then left the steps and walked over to the two women and

attempted to and did separate them and thereafter pro-
ceeded to his truck parked in the street in front of the
Linder residence; that while Schaeffer was proceeding
to the truck, appellee picked up some stones and threw
them at him and persisted in throwing stones at him
upon his arrival at the truck, whereupon he said: "If
you take and throw another one I will come out after
you"; that appellee then threw another stone at Schaef-
fer, whereupon he left the truck, grabbed her, and, after
much scuffling, left her, returned to his truck, and pro-
ceeded on his way; that the injuries of which appellee
complains were the result of the acts and conduct of
said Schaeffer as heretofore stated.

The evidence further discloses, beyond dispute, that
appellee was not a customer of the appellant milk com-
pany, and in no manner was she or her presence on the
day in question connected with the business of the ap-
pellant milk company, nor with the performance of any
act necessary in the discharge of any duty by their em-
ployee, Schaeffer; that neither the controversy and alter-
cation between appellee and Mrs. Bierrault, nor the sub-
sequent controversy and altercation between appellee
and Schaeffer were necessary in the furtherance of any
business of the milk company. The whole affray be-
tween appellee and Mrs. Bierrault was entirely foreign
to the business of the appellant milk company and the
line of duty to which Schaeffer was assigned. His inter-
ference into this affray was entirely and wholly discon-
nected with the line of duty which he owed to his em-
ployer. Of this there can be no doubt, both from the
facts proved and the rules of law applicable thereto.

"A master is responsible, ordinarily, for the conse-
quences resulting to others from the negligence or want
of skill with which his employees do his business. This
responsibility results from the duty which he owes to
others, as a member of the community, to employ care-

ful and skillful servants; to the end that his fellow men may not suffer by the negligence or ignorance with which the master's business is done. It is but a reasonable requirement, easily fulfilled, and the law in this respect requires merely the performance of that which a proper care for the rights of third persons would demand. But a wilful and malicious trespass of the servant, not commanded or ratified by the master, but evidently perpetrated to gratify the private hate or malignity of the servant, under mere color of discharging the duty which he has undertaken for his employer, has been held by a uniform and unbroken current of decisions, ever since *McManus* v. *Crickett,* 1 East 106, to give no right of action against the master. The servant himself is, in such case, held to be liable to the injured party, though he is, in general, not liable to strangers for the consequences of mere negligence in the course of his employment. . . . It is not to be understood, however, that the master is never liable for the wilful and malicious acts of the servant, unless he had directed those specific acts to be done. The rule is not so broad as that. If the act of the servant complained of was necessary to be done to accomplish the purpose of the servant's employment—if it was essential as a means to attain the end directed by the master, and was intended for that purpose, then it was implied in the employment, and the master is liable, though the servant may have executed it wilfully and maliciously. But when it is unnecessary to the performance of the master's service, and not really intended for that purpose, but is committed by the servant merely to gratify his own malice, though under pretense of executing his employment, it is not done to serve the master, and is not, in fact, within the scope of the employment, and the master is, therefore, not liable." *The Evansville and Crawfordsville R. R. Co.* v. *Baum* (1866), 26 Ind. 70, 72, 73.

We think it is well settled that a corporation is liable for the wilful acts and torts of its agents committed within the general scope of their employment, as ██ well as acts of negligence; and that the corporation is thus bound, although the particular acts were not previously authorized, nor subsequently ratified by the corporation, and doubtless, if a servant or agent committed a tort out of the scope of his agency or employment and not connected with it, the principal would not be liable therefor unless he previously authorized or subsequently ratified the act. *The Jeffersonville R. R. Co.* v. *Rogers* (1871), 38 Ind. 116; *The Indianapolis, Peru & Chicago R. W. Co.* v. *Anthony* (1873), 43 Ind. 183.

"The rules we have stated lead to the conclusion that the principal is liable for the tort of the agent, where the particular act, although wilful and not directly authorized, was within the line of the agent's duty; but if the act was an independent one, and not within the scope of the agency, the person injured can not compel the principal to respond in damages." *Evansville, etc., R. W. Co.* v. *McKee* (1884), 99 Ind. 519, 521.

"Whether a servant in a given case was acting within the scope of his employment, in pursuance of his line of duty, or on his own responsibility, in pursuit of his own pleasure or convenience, must usually depend upon the facts in such case. To undertake to lay down a general rule applicable to all cases would not only be difficult, but impossible. But we think this much may be said, where a servant is engaged in accomplishing an end which is within the scope of his employment, and while so engaged adopts means reasonably intended and directed to the end, which result in injury to another, the master is answerable for the consequences, regardless of the motives which induced the adoption of the means; and this, too, even though the means employed were out-

side of his authority, and against the express orders of the master. .... .

"Where a servant steps aside from the master's business and does an act not connected with the business, which is hurtful to another, manifestly the master is not liable for such act, for the reason that having left his employer's business, the relation of master and servant did not exist as to the wrongful act; but if the servant continues about the business of the employer, adopts methods which he deems necessary, expedient or convenient, and the methods adopted prove hurtful to others, the master is liable." *The Pittsburgh, etc., R. W. Co.* v. *Kirk* (1885), 102 Ind. 399, 402, 403, 1 N. E. (2d) 849.

It is held by these authorities, and many others equally well settled, that the master is liable for a tortious act of his servant committed while performing his master's service, or, as some of the courts have expressed it, "committed while acting within the scope of the employment," or "within the line of the agent's duty," though not previously authorized nor subsequently ratified by the master. On this proposition there does not seem to be much contention between the parties, but the exact question here presented, as we view it, is, Is the evidence sufficient to make out a case within the above rules, imposing liability on the employer by reason of the acts and conduct of its agent?

A careful consideration of all the evidence in the record is required in disposing of this question, and in so doing we must keep in mind the well-established rule that this court will not weigh the evidence where it is conflicting. If there is any evidence tending to support every essential fact necessary to sustain the verdict, it is sufficient. It is also the rule that the court or jury trying the cause may draw any reasonable inference of fact from the evidence. It is not

essential that a fact be proved by direct and positive evidence, but where it may reasonably be inferred from the facts and circumstances which the evidence tends to establish, it will be sufficient on appeal. It is only when there is no evidence on some essential element to sustain the judgment, or to sustain any reasonable inferences in support thereof, that this court would be justified in reversing a judgment for want of evidence.

A careful reading of the evidence in the light of the above rules forces us to the inevitable conclusion that there was a total lack of proof that Schaeffer ██ was acting in the line of his duty as an employee of appellant milk company at the time of the commission of the tortious acts upon appellee.

Appellee urges that at the time Schaeffer was on his way to the truck which he had parked nearby and was attempting to drive away in pursuance of his duties for his employer, it was likewise his duty to protect the truck; that therefore it was in the line of Schaeffer's duty, as agent for the appellant milk company, in attempting to protect said truck, to prevent appellee from throwing stones toward the truck; and that in the accomplishment of this purpose he committed a second assault and battery upon appellee, thereby inflicting injuries for which the company should respond in damages.

This contention can not be sustained by the evidence, and especially is this true in view of appellee's own version of what occurred. According to her testimony she was making no effort to obstruct the operation of the milk company truck nor any effort to damage the truck, but became angry with Schaeffer and directed all of her activity at the time of the encounter with Schaeffer against him, not against the property of the milk company. Under such facts it would be a strained construction of the most reasonable inferences to assume that

Schaeffer was in the act of protecting the truck ·when he alighted therefrom and engaged in a further altercation with appellee occasioned by her throwing stones at him.

Appellee insists that the appellant milk company placed its servant on the premises and at the scene of the altercation and committed him to the management of the business of the company and should therefore be held responsible, when the servant, through lack of judgment or discretion, or from infirmity of temper, or under the influence of passion aroused by the circumstances and the occasion, goes beyond the line of duty and inflicts an unjustifiable injury upon another.

We think this contention was answered by the Supreme Court in the case of *The Evansville and Crawfordsville R. R. Co.* v. *Baum, supra,* at pp. 73 and 74: "It will not do to say that he shall answer in damages, because, by employing the servant, he gives him opportunity to maltreat those with whom he comes in contact in discharging his duties. That reason would hold the shopkeeper for any outrage committed by his clerk upon a customer; the mechanic for the like conduct of his journeyman; and, indeed, it would be equally applicable to almost every department of business, in the conduct of which it is necessary or convenient to employ assistants to deal with the public. Even the innkeeper, whose cook feloniously mingles poison with the food of a guest, must then respond in damages for the injury. Nor will sound policy maintain the application of a rule of law to railways or corporations, on this subject, which shall not be alike applied to others, as has been intimated in some quarters. The suggestion is not fit to be made, much less sanctioned in any tribunal pretending to administer justice impartially. 7 Eng. L. & E. R. 549."

We conclude that the trial court erred in refusing to direct a verdict for the appellant Polk Sanitary Milk Company.

There are other questions presented by appellant, but we see no reason, in view of the conclusion we have reached, of discussing them. Raymond Schaeffer, although named as appellant, did not appeal.

The judgment is reversed as to the Polk Sanitary Milk Company, with instructions to grant it a new trial, and for further proceedings not inconsistent with this opinion.