**William ROBERSON, Plaintiff–Appellee,**

**v.**

**BETHLEHEM STEEL CORPORATION, Defendant–Appellant.**

**No. 89–1430.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 3, 1989.

Decided Sept. 4, 1990.

Bernard Davis, Steven J. Seidman, Chicago, Ill., for plaintiff-appellee.

John K. Hughes, Marci S. Sperling, Gessler, Flynn, Fleischmann, Hughes & Socol, Chicago, Ill., Walter Morrissey, Bethlehem Steel Corp., Law Dept., Bethlehem, Pa., for defendant-appellant.

Before FLAUM, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In this diversity case, Bethlehem Steel Corporation appeals from the district court's denial of its motion for a judgment notwithstanding the verdict (judgment n.o. v.). For the reasons stated below, we affirm the magistrate's denial of the motion.

## I. FACTUAL BACKGROUND

William Roberson drove to a loading dock at Bethlehem Steel's Burns Harbor, Indiana, plant to pick up a shipment of steel. When he pulled his truck into the empty loading bay, Bethlehem Steel workers were loading coils of steel onto railroad cars. Three other trucks pulled into the bay after Roberson, and although the trucks were usually loaded on a "first come-first served" basis, Roberson waited as the other trucks were loaded and the workers took a break. This delay was apparently due to the fact that the truck number on Roberson's gate pass did not match the number on his truck.

Roberson's truck was finally loaded—off center. The truck sagged to one side and could not be safely driven, so Roberson went to the foreman's shanty and asked the foreman, James R. Borucki, to instruct his craneman to center the load. The craneman refused to move the load, but stated that he would *remove* the load. Borucki asked Roberson if removing the load was acceptable, and Roberson assented, although expressing displeasure. Roberson returned to his truck to tie down his four-by-fours and Borucki telephoned security to report an irate truckdriver. Roberson came back to the shanty to get his gate pass and leave the steel plant.

After receiving his gate pass, Roberson exchanged words with Borucki. Witnesses disagreed over how vociferously Roberson complained about being treated and whether he verbally threatened or abused Borucki. Borucki apparently had been put "on hold" by whoever answered the phone at plant security. When Roberson turned to leave the shanty, Borucki hit him once in the jaw, knocking him down. Borucki then grabbed Roberson by the collar and placed his knee on Roberson's chest to keep him from struggling and falling onto the loading bay. Two Bethlehem Steel workers separated Borucki and Roberson, and Roberson pulled a knife. Plant security arrived at that time and took Roberson to the plant clinic.

That night Roberson went to a hospital where x-rays revealed a broken jaw. The next day Dr. Lester Beste, a dentist and specialist in oral and maxillofacial surgery, wired Roberson's mouth shut and ordered him to stay off work for eight to ten weeks. Roberson did not work for two months.

## II. *PROCEDURAL HISTORY*

Roberson filed a complaint against Bethlehem Steel in Cook County (Illinois) Circuit Court for the injuries he suffered at the hands of Borucki, under a theory of *respondeat superior.* His complaint sounded in both intentional tort and negligence. Roberson sought damages of at least $15,000. Bethlehem Steel removed the case to federal court. The parties consented to have the case proceed before Magistrate James T. Balog. *See* 28 U.S.C. § 636.

Following trial, the jury returned a verdict in favor of Roberson and awarded damages for lost wages, medical expenses, pain, and suffering in the amount of $33,000. Pursuant to Fed.R.Civ.P. 50(b), Bethlehem Steel then moved for a judgment n.o.v. The motion was denied and Bethlehem Steel timely appealed.

## III. *DISCUSSION*

We review *de novo* the decision to deny Bethlehem Steel's motion for judgment n.o.v. *DeRance, Inc. v. Paine Webber, Inc.,* 872 F.2d 1312, 1320 (7th Cir.1989); *McCalpine v. Foertsch,* 870 F.2d 409, 414 (7th Cir.1989). We must determine whether the evidence, and the reasonable inferences derived from it, provided a sufficient basis for the jury's verdict. *Erwin v. County of Manitowoc,* 872 F.2d 1292, 1295 (7th Cir. 1989) (citing *Steffen v. Meridian Life Insurance Company,* 859 F.2d 534, 546 (7th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989) and *Selle v. Gibb,* 741 F.2d 896, 900 (7th Cir.1984)).

 We apply the law of the state where the assault occurred, and under Indiana common law, an employer will not be liable under the theory of *respondeat superior* for an act committed by an employee unless the employee acted within the scope of his employment. *See Gomez v. Adams,* 462 N.E.2d 212, 223 (Ind.App. 1984) (citing *Wells v. Northern Indiana Public Service Co.,* 111 Ind.App. 166, 40 N.E.2d 1012 (1942) ("an act of a servant is not within the 'scope of employment' if it is done with no intention to perform it as part of or incident to the service for which he is employed"). Further, "even though the employee's predominant motive in performing the act is to benefit himself, the act may still fall within the 'scope of employment' if the employee's purpose, to an appreciable extent, was also to further his master's business." *Id.*[1] An employer cannot be held liable simply because the person who committed the act was an employee and the event happened on company property. *See e.g., Polk Sanitary Milk Co. v. Berry,* 106 Ind.App. 29, 17 N.E.2d 860 (1938).

There was no dispute that foreman Borucki punched Roberson in the jaw and that Roberson sustained injuries for which he missed work and suffered pain and medical expenses. The two key factual issues to be decided by the jury were whether Borucki was acting within the scope of his employment and in furtherance of Bethlehem Steel's business when he struck Roberson, and whether Borucki acted in self-defense.

 We first examine the evidence relating to whether Borucki was acting in furtherance of his employer's business when he struck Roberson. Borucki testified that, as a foreman, he was responsible for the smooth operation of the loading docks, which included dealing with dissatisfied truck drivers. Borucki stated that he usually would call plant protection to escort unruly drivers out of the plant and

---

1. As we have noted, "unless we have a good reason to believe that the state's highest court would reject a decision by an intermediate court, we treat that decision as authoritatively stating the law of the state." *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.,* 833 F.2d 633, 638–39 (7th Cir.1987).

that his goal as a foreman was to keep the dock running in an orderly fashion.

Borucki also testified that before he hit Roberson, he had intervened in an argument between Roberson and Jim Smith, a fellow Bethlehem Steel worker. Borucki stated that Roberson did not seem threatening at this point; however, the foreman stepped between the two men so that things "would not get out of hand." Borucki testified that when he told the craneman to take the steel coil off Roberson's truck, Roberson threatened to "kick [Borucki's] ass" and Borucki dialed plant security. As Roberson returned from rearranging the four-by-fours on his trailer, Borucki stayed on the telephone so that security could hear his conversation with Roberson. Borucki then heard the phone click as if he had been put on hold; the dispatcher did not state that plant security was on its way to the loading dock.

According to Borucki, Roberson was threatening him again at this time. Roberson stood in the doorway of the shanty. Borucki stated that he tried to move past Roberson and out of the shanty in order to avoid a fight. When Borucki moved, Roberson turned his body to his right, and although Borucki never saw Roberson make a fist, he thought he saw Roberson raise his arm. Borucki then hit Roberson.

Bethlehem Steel first argues that since Roberson had his gate pass and was free to leave the plant before he was punched, Borucki's task was complete, and any act by Borucki was, by definition, outside the scope of his employment. Bethlehem Steel relies on *Wells*, 40 N.E.2d at 1013–14 (where the employer was not liable because the employee was acting as if his working days were over, "or his task completed"). Borucki's working day was not over when the incident transpired. He testified that he was scheduled to work until 7:00 p.m. and the incident occurred at 3:47 p.m. Perhaps *Roberson's* task was completed vis-a-vis the steel plant when he received his gate pass and was free to leave without his

load of steel. The same cannot be said of Borucki.

Borucki's job was to ensure the smooth running of the dock. Borucki had intervened previously in a disagreement between Roberson and a loading dock worker because Roberson perceived that workers had purposefully made him wait.[2] Roberson's protestations were disrupting the loading of other trucks on that Friday afternoon. Borucki's task as a foreman was *not* completed, because he was responsible for dealing with dissatisfied customers, such as Roberson.

■ Further, Borucki testified that before he punched Roberson, he did not know whether plant protection was on its way or not. The jury could reasonably infer that Borucki thought that he would have to handle the irate truck driver himself. The fact that Borucki "pursue[d] his official duties with an excess of zeal" does not extinguish Bethlehem Steel's liability under *respondeat superior*. *Lancaster v. Norfolk and Western Railway Company*, 773 F.2d 807, 819 (7th Cir.1985), *cert. denied*, 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

■ Bethlehem Steel also asserts that Roberson should not have prevailed because he failed to prove the two elements necessary to recover damages resulting from an intentional tort under *respondeat superior*, citing our decision in *Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Company*, 833 F.2d 633 (7th Cir.1987). In that case, we noted that (describing *respondeat superior* in a Federal Employers' Liability Act case):

> ordinarily the employer is liable for damages (whether actual or punitive) from an employee's *intentional* tort, such as conversion, only if the employee was acting not only within the scope of his employment but in furtherance of it—that is, only if the tort was intended, however misguidedly, to promote the employer's business, as where an overzealous employee beats up someone who owes his employer money, in an effort to collect it.

**2.** Whether or not Roberson was justifiably angered over the time it took to load his truck and the way it was loaded is not relevant to the issue of Borucki's scope of employment.

*Id.* at 638 (citing *Lancaster,* 773 F.2d at 808 and Prosser and Keeton on the Law of Torts, § 70, at pp. 505–06 (5th ed.1984) (emphasis in original).[3] Bethlehem Steel argues that even if Borucki acted within the scope of his employment, he did not act in furtherance of Bethlehem Steel's business when he punched Roberson because work was interrupted by the fracas and ensuing questioning by the security force.

■ At oral argument, appellant's counsel conceded that some intervention by a person with Borucki's responsibilities may be necessary to further his master's business when the smooth operation of the loading dock is interrupted. We agree. If the smooth operation of the loading docks furthered Bethlehem Steel's business, and Borucki acted so as to keep the dock running smoothly, he acted with the intent to further Bethlehem Steel's interest. "If a supervisor pursues his duties with an excess of zeal, the employer is liable for the torts resulting from that excess; *they are in furtherance of the employer's goals." Lancaster,* 773 F.2d at 819 (emphasis added). The question on appeal is whether a reasonable jury could have found that Borucki was acting to further " 'to an appreciable extent ... his master's business.' " *Tippecanoe Beverages,* 833 F.2d at 638 (where it was a question of fact for the jury to determine whether El Aguila's agent was acting to further his employer's business). We hold that a reasonable jury could have found that Borucki acted in an attempt to keep the dock running smoothly, furthering Bethlehem Steel's business.

■ However, if Borucki acted in self-defense no one would be liable for Roberson's injuries. The jury was instructed on the law of self-defense: that if Borucki had acted with a reasonable amount of force to an imminent, perceived threat, then self-defense would have been a complete defense

to the intentional torts of assault and battery.

Whether Borucki acted in self-defense turns on witness credibility. There were differing versions of Roberson's actions. Roberson and a friend who was helping him that day, Norman Madkins, testified that Roberson did not raise his voice, swear, threaten to beat up Borucki, or attempt to strike Borucki. Borucki testified that Roberson verbally threatened him, cursed, and looked like he was preparing to strike Borucki. Jim Smith, Borucki's co-worker, testified that while sitting in the foreman's shanty, he observed Roberson draw back his arm and make a fist. Charles Hroma testified that Roberson threatened to "kick [Borucki's] ass," then said something else and drew back his hand before Borucki punched him.

Two witnesses' depositions were read into the record. Gary L. Walls, Sr., a truck driver getting steel at the loading dock, stated that Roberson cursed and threatened Borucki. Walls stated that Roberson "made a forward motion toward the foreman and ... I would say his arms moved a little bit too, and I would have surmised that he was going to strike me, and I probably would have hit him first, too."

Robert Eugene Gallant's deposition testimony questioned Bethlehem Steel employees' honesty. Gallant was a member of Bethlehem Steel's plant protection force who investigated the incident and wrote up a report. Gallant testified that he "tried to talk to some of the ... Bethlehem people, but they don't talk. It is just something in fact in the mill. They don't talk to plant security about one another."

With the conflicting evidence before them, the jury determined that Borucki did not act in self-defense. There was substan-

---

**3.** Whether an employee acted "to an appreciable extent ... to further his master's business," *Gomez,* 462 N.E.2d at 223, may be another way of stating that he acted within the scope of his employment. As the Indiana appellate court has stated: "[a] master is *not liable* for acts of his servant committed outside the line of his duty *and* not connected with his master's business...." *Gomez,* 462 N.E.2d at 223 (citing

*Louisville & Nashville R.R. Co. v. Gillen,* 166 Ind. 321, 76 N.E. 1058 (1906)) (emphasis added). Thus, stated in the positive rather than negative form, if Roberson could prove *either* that Borucki acted within the scope of his employment *or* in connection with Bethlehem Steel's business, he could recover under *respondeat superior.*

tial evidence in the record for the jury to find that Roberson did not so threaten Borucki that physical force was required, or that Borucki responded to verbal insults with an unreasonable amount of force, based on the witnesses' credibility.[4] "[I]t is not our function to reconsider the evidence or to assess the credibility of witnesses." *United States v. Petitjean,* 883 F.2d 1341, 1347 (7th Cir.1989) (citations omitted); *see also United States v. Blanton,* 884 F.2d 973, 977 (7th Cir.1989) (citations omitted). The jury acted reasonably in finding that Borucki did not act in self-defense.

### IV. CONCLUSION

We find that sufficient evidence existed for a reasonable jury to hold Bethlehem Steel liable under the theory of *respondeat superior* for the injury inflicted by its foreman, Borucki, on Roberson. The jury had been instructed that for Roberson to recover, he had to prove that Borucki was acting as Bethlehem Steel's agent in the attempted furtherance of the company's interest when he intentionally struck Roberson and proximately caused Roberson's injury. The jury was told that self-defense was a complete defense for Bethlehem Steel, and that Roberson could not recover unless Bethlehem Steel failed to prove that Borucki acted in self-defense. Bethlehem Steel did not object to these instructions. Sufficient evidence existed to support the jury's findings of fact. Therefore, the deci-sion of the district court to deny Bethlehem Steel's motion for a judgment n.o.v. is

AFFIRMED.

---

4. We find disingenuous Bethlehem Steel's argument that if we read the facts in the light most favorable to Roberson, and we must, that we must find that Borucki acted out of his own personal animus, and totally without the scope of his employment. Bethlehem Steel first states that Roberson insists that he did nothing to provoke the attack. However, all witnesses agreed that Roberson complained about his treatment and pestered the foreman several times. Roberson was disrupting the smooth operation of the dock with his protestations. The difference in testimony was how vocal and threatening Roberson was in complaining about his allegedly poor treatment. But more importantly, even if Borucki primarily acted with animus, Bethlehem Steel could still be liable, for "even though the employee's *predominant* motive ... is to benefit himself," if his action can nonetheless to some appreciable extent further his master's business (such as keeping the loading dock running smoothly), the master will be liable. *Gomez,* 462 N.E.2d at 233 (emphasis added).